————o————

No. 3922.

(Court of Appeal, Parish of Orleans.)

## MARYLAND CASUALTY CO. vs. NEW ORLEANS COTTON SEED OIL AND MFG. CO.

1. The burden of proof is on him who has to support his case by a fact of which he is supposed to be most cognizant and the evidence of which is more within his power than of his opponent.
2. Words occurring in a contract are to be construed in their ordinary usual and popular sense, unless they have been given a contrary legal construction, or have acquired a distinct commercial meaning by usage or are peculiar to some art, trade, or science and have thereby acquired a technical meaning, or unless it is apparent from the context that a distinct and particular meaning was intended.
3. The term "employe" is correlative to "employer," and neither, in general use, has a restricted meaning by which either continuity or employment or service, or the particular character of employment or service, is indicated.

Appeal from Civil District Court, Division "E."

P. M. Milner, for Plaintiff and Appellee.

Solomon Wolff, for Defendant and Appellant.

MOORE, J. This case involves the construction of a contract of Casuality Insurance *quoad* the word "employees" as

285

it is employed in the policies issued by the plaintiff to the defendant.

The purpose of these policies is to indemnify the assured, as an employer of labor, against loss from Common Law or Statutory liability on account of bodily injuries, fatal or non-fatal, sustained by the employees while on duty within the shops, factory and yards mentioned in the applications for policies. The rate of premium charged is based upon the total wages to be paid by the assured during the period of the policies.

When the application is submitted for such policies an estimate is made of the probable amount of wages that the assured, (the employés) would pay during the year of the life of the policy, and the premium to be paid is then based thereon. The contract between the assurer and the assured, stipulates, however, that if the compensation actually paid to its employes by assured, exceeds the estimated pay-roll, the assured is to pay the additional premium earned; and, if on the other hand, the estimated pay-roll should exceed the amount actually paid the employes the assurer would return to the assured the unearned premium pro-rata, provided that the premium returned should in no event be less than $25.00. The right on the part of the insurer to, at all reasonable times, examine the books of the assured, so far as they relate to the wages paid to the employes, and also to inspect the plant, works, machinery and appliances used in the business, is reserved and accorded to the assurer.

Under these terms and conditions several policies of this character were issued to the defendant by plaint ff.

The basis of the premium charged to and paid by the defendant was on an "estimated" pay roll. Subsequently it was discovered by defendants own books that the "estimated" pay roll was considerably less than the actual pay roll and that, therefore, premiums for a greater amount than those actually paid, were, under the terms of the contract, due the assurer. This suit was therefore instituted to recover same. There is no dispute as to what the pay roll, according to defendants books, actually show, nor as to the defendants liability for the excess premium due on that basis, if the pay rolls as thus

shown represent the wages of those who fall within the meaning of the word "employe," which it is claimed it does not. The argument is, substantially that the wages of "employes," as this latter word is employed in the contract, comprehends only the wages of those who are in the regular and continued service of the assured, and that others who may be hired by the assured for short periods of time during the year, such as persons engaged in loading and unloading products and performing other labor for the assured, do not fall within the meaning of the word "employe;" that this word does not mean a person who may be employed "off and on," and for a limited period on the several occasions he may be in his employer's service, but implies a continuity of service of the person employed; and finally, that whatever may be the meaning of the word, as the assured is not indemnified against loss from common law or statutory liability on account of injuries which the temporily employed laborers might sustain while in the employ of the assured, it was not, therefore, within the contemplation of the parties to the contract that such wages should be made the basis for the fixation of the premium charge.

If it should be conceded that the payments as shown by defendant's books, and from which books the plaintiff made the proof as to the gross amount of the annual pay rolls, include in them the wages paid the laborers who were engaged for short periods of time in loading and unloading cars and performing other temporary service, it would be sufficient answer to defendant's contention that such wages should be excluded as a basis on which to fix the premium charge, to say that the proportion which these wages bear to the entire amount of wages paid, is not made to appear. The defendant company vouchsafes no information as to this fact, and its president who testified in the cause, contents himself with the simple statement: "that the pay rolls include every dollar that has been paid out for labor, whether it is paid out at one place or another." The moment the plaintiff established the gross amount of the pay rolls, the burden shifted to the defendant of showing what deductions should be made from them under the theory of its defense. This is on

the principle that the burden of proof is on him who has to support his case by a fact of which he is supposed to be the most cognizant and the evidence of which is more within his power than that of his opponent.

But assuming that the record contains this evidence how can the defendant be advantaged thereby?

It is a general rule that contracts of insurance, whether they be of life, fire, marine or casualty, are construed, in most respects, like other contracts. One of the rules of construction applicable alike to contracts of any character is that words occurring therein are to be construed in their ordinary, usual and popular sense, unless they have been given a contrary legal construction, or have acquired a distinct commercial meaning by usage, or are peculiar to some art, trade or science, and have thereby acquired a technical meaning, or unless it is apparent from the context that a distinct and particular meaning was intended; and this rule is in accordance with all the authorities.

So Emerigon says: "The true meaning of an expression in its ordinary use is the idea that people are accustomed to attach to it. "Emerigon on Ins. C. No. Sec. 7. p. 50." And Lord Ellenborough declares that the policy "is to be construed according to its sense and meaning as collected, in the first place, from the terms used in it, which terms are themselves to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject matter, as by the known usage of trade, or the like, acquired a peculiar sense distinct from the popular sense of the same words, or unless the contract evidently points out that they must in the particular instance, and in order to effectuate the immediate intention of the parties to that contract, be understood in some other special and peculiar sense." Robertson vs. French, 4 East 135. So Chancellor Walworth declares that: "A policy of insurance like any other contract, is to be construed by the popular understanding or the plain and ordinary sense of the terms employed, unless these terms have receivd a legal construction or have acquired a technical meaning in reference to the subject matter of the contract.

288

Don vs. Whitten, 8 Wend. (N. Y.) 160-167; and this finds expression in our own code to the effect that "the words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules; as to general and popular use." C. C. 1946.

It is not pretended that the word "employe" has ever acquired a technical meaning, or that it has been given a legal construction different from its ordinary, usual and popular sense. On the contrary, the contention is that in its ordinary, usual and popular sense it imparts *permanency* of employment or service.

There is no authority for such construction. The term "employe" is correlative to "employer," and neither, in general use, ment or service, or the particular character of employment or service is indicated.

The terms are as applicable to a manufacturing company and its day laborers, as they are to an Insurance Company and its corps of clerks. To employ is to engage or use an other, as an agent or substitute in business, for the performance of some service; it may be the servile and unskilled manual labor of the person hired by the day, as well as the skilled services of the Actuary who is employed and paid by the year. Webster, in his dictionary, says an "employe" is one who is employed, and he defines "employ" to be "that which engages or occupies a person." Worchester says an "employe" is one who is employed, "an official, a clerk, a servant."

Johnson's dictionary does not define the word as the word was subsequent to the publication of that dictionary, adopted into our language from the French.

The Centuary Dictionary and Cyclopedia defines "employe" to be "one who works for an employer; a person working for a salary or wages; applied to any one so working, but. usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government, or to domestic servants." ,

American and English Encyclopaedia of law defines it to be "one who is employed. "In re Courtland Mfg. Co. 45 N. Y. Sap. 630 the Court said: "An employe is a person who is employed; one who works for wages or salary."

289

In Palmer vs. Van Sautwood 47 N. E. Rep. (135 N. Y. 612) the Court adopted the definition of the Century Dictionary, supra.

In Johnson vs. Barriels, 41 Pac. Rep. 656 the Court said that: "Employes are generally considered as embracing laborers and servants and those occupying inferior positions."

"There is no distinction," said the Court in Farmer vs. St. Croix, 117, Wes. 76, 93 N. W. Rep. 830, "between the terms laborer and employe as regards the element of personal services."

There is quoted to us in the defendants brief an isolated passage from the opinion of the Court in Louisville, etc. R. R. Co. vs. Wilson, reported in 138 N. S. p. 505, to the effect that:

"The terms "officers" and "employers," both alike refer to those in regular and continual service. Within the ordinary acceptation of the term, one who is engaged to render service in a particular transaction is neither an officer nor an employe. They imply continuity of service, and exclude those employed for a special and single transaction;" which it is argued sustains the instant defendants contention.

When this excerpt from the opinion is read in the light of the subject matter under consideration by the Court and which the quoted expression was intended to apply, it will be made manifest that it does not sustain the contention presently made.

In that case the question submitted to he Court for its decision was whether the counsel employed for the special purpose of foreclosing a mortgage under which a railroad was sold, could be paid his fee out of the proceeds of the foreclosure sale in preference to the secured liens on the ground that as the order of Court directed that the "salaries of officers," and "wages of employees," should be paid before any distribution is made to the secured lien, his employment as such special counsel constituted him either an "officer" or an "employe" and that, therefore, his fee should be paid by preference as such.

The Court, as the exerpt indicates, held that its construction of the order of Court was that the terms "officers" and "employes" as therein employed referred only to those in regular and

continual service of the railroad, and not to a counsel employed for a special and single transaction. The Court did not undertake, nor has any Court, so far as we have been advised, undertaken, to define the word "employed" differently from that of the Lexicographers.

It is threfore, manifest, that literally and lexically, all the temporally employed laborers whose wages figures on defendant's pay roll, are its employes.

It may not be doubted that although temporally employed laborers are "employes" in the sense of this term, the wages carried on defendant's pay rolls for this class of employes cannot form the basis for the ascertainment of the amount of premium to be charged, if, as contended by defendant, the policies do not assure indemnity against damages on account of injuries which this class of "employes" might sustain.

It is not indicated, however, either in the oral or printed argument of defendant's counsel how the conclusion is reached that the indemnity assured, does not cover injuries to this class of employes; nor can it be conceived how, in view of the stipulation in the policies to the effect that the assured is to be indemnified; "against loss for common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidently suffered within the period of this policy *by any employe* or employes of the assured while on duty within the factory shop or yards mentioned in this application, or upon the ways immediately adjacent thereto, etc., etc.," the assurer's liability for this character of loss could be doubted.

The balance of premium due under the policies, according to the amount of the pay-rolls proven, is $483.44-100, for, which judgment was rendered below. The judgment appealed from is, therefore, not error and it is affirmed.