## SANDERS v. DAVIS.

No. 9819—Opinion Filed Oct. 5, 1920.

(Syllabus by the Court.)

1. **Oil and Gas—Rights of Lessee—Possession of Premises.**

By virtue of the terms of the usual and ordinary oil and gas mining lease, the lessee is entitled to the possession of such portions of the surface of the land covered by the lease as may be reasonably necessary, for the development and exploration of the leased premises under the terms of the lease.

2. **Same—Right to Remove Property and Improvements.**

Where, under the terms of an oil and gas mining lease, the right is reserved by the lessee to cease operations when it is found that oil or gas cannot be produced in paying quantities thereon, and the further right is reserved by the lessee to remove, at any time, the property and improvements placed or erected in or upon the leased premises, the latter has the same right to go upon the leased premises for the purpose of removing this property which he had in the first instance in going upon the property for the purpose of developing the same under the lease, provided he acts within a reasonable time.

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by Joe Davis against G. W. Sanders to enjoin defendant from interfering with

the removal of certain property used in operation of an oil and gas lease. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

H. B. Martin, for plaintiff in error.

G. C. Spillers and Lee Daniel, for defendant in error.

PITCHFORD, J. This action was commenced on the 1st day of February, 1917, in the superior court of Tulsa county by the defendant in error, who for convenience will hereafter be referred to as plaintiff, against the plaintiff in error, who for convenience will be hereafter referred to as the defendant.

The primary object of the action was to enjoin the defendant from interfering with the plaintiff in removing certain personal property used in the operation of an oil and gas mining lease, covering the northwest quarter of the southeast quarter of section twenty-seven (27), township nineteen (19) north, range twelve (12) east, of Tulsa county, Oklahoma.

Both plaintiff and defendant deraigned title through one George W. Armstrong. It appears that on the 14th day of December, 1910, George W. Armstrong and Jennie Armstrong, his wife, executed and delivered to the Texas Producing Company a deed to the land leased. On the 1st day of August, 1913, the Texas Producing Company executed to one J. S. Janowitz an oil and gas mining lease on the lands. On December 12, 1913, Janowitz assigned the lease to the Okalucky Oil Company. On August 5, 1915, a mechanic's lien was foreclosed against the Okalucky Oil Company, and thereafter, on November 26, 1915, the lease was sold by the sheriff of Tulsa county under and by virtue of an execution issuing upon said judgment, and the plaintiff became the purchaser thereof, which sale was thereafter confirmed by the superior court of Tulsa county, Oklahoma. After the lease was made by the Texas Producing Company to Janowitz, it appears that possession was taken of the premises and drilling commenced. All together there were four wells drilled.

There is nothing in the record indicating that any question was at any time raised as to the right of the lessee, Janowitz, or the Okalucky Oil Company to operate under the lease. The defendant claims title to the land covered by the lease by virtue of a deed from George W. Armstrong and Jennie Armstrong, his wife, to J. L. Harnage, dated October 23, 1910, and by foreclosure sale and purchase by the defendant at the sheriff's sale of the right and title of J. L. Harnage under and by virtue of the foreclosure of a material-

man's lien against J. L. Harnage, and the sale of the property covered by the lease on the execution issuing upon said judgment and the purchase thereof by the defendant on May 9, 1914.

While it is claimed that George W. Armstrong and wife had deeded the property to J. L. Harnage, no deed to Harnage was introduced in evidence. However, the judgment foreclosing the mechanic's lien against Harnage, together with the sheriff's deed to the defendant, was introduced in evidence and was before the court. It is a further contention of the defendant that when Harnage's interest was sold, the conveyance by the sheriff, conveyed to the defendant full and complete title of the property covered by the lease, which included all property placed on the premises by the lessee in connection with the wells. After the plaintiff had purchased the lease at the sheriff's sale, together with the piping, tanks, and other property placed on the premises by the lessee, he sought to enter the premises for the purpose of operating the wells and was prevented by the defendant. The plaintiff thereupon secured an injunction against the defendant from interfering with the plaintiff in operating the wells.

The lease in controversy provides:

"That the lessor in consideration of one 00/100 dollars and other valuable consideration, paid by the lessee the receipt of which is hereby acknowledged do hereby grant, demise and let unto the said lessor all the oil, gas or minerals in and under the following described tract of land and also said tract of land for the purpose of operating thereon for said oil and gas with the right to use water, oil and gas free from royalty therefrom for drilling and operating purposes and all right and privileges necessary or convenient for conducting said operations and the transportation of water, steam, oil and gas and waiving all rights to claim or hold any of the property or improvements placed or erected in or upon said land by lessee and all the property and improvements may be removed at any time by the lessee before or after the return forfeiture or expiration of the lease. * * *"

The lease further provides "that the same was for a term of five years from the date thereof and as much longer as oil or gas was found in paying quantities thereon."

It is the contention of the plaintiff that after spending considerable money and time in an effort to get the property in a condition so that it might be operated on a paying basis, he was finally forced to the conclusion that the leased premises could not be made to produce oil in paying quantities, that the production was approximately one barrel a

day, and that the plaintiff could not continue the operation of the lease except at a great loss. When the plaintiff ceased operations and sought to pull the casings and remove the other property placed on said premises under and by virtue of the lease, he was forbidden to do so by the defendant, and the arguments of the defendant were strengthened and enforced by the use of locks and a shotgun.

Upon the close of all the evidence, the court rendered the following judgment:

"Now on this the 18th day of July, A. D. 1917, the same being one of the regular judicial days of the July, 1917, term of said court, this cause comes on to be heard in its regular order, the plaintiff appearing in person and by attorney, and the defendant appearing in person and by attorneys, and the court, having heard the evidence and the arguments of counsel and being fully advised in the premises, finds the issues in favor of the plaintiff and against the defendant.

"The court further finds that Joe Davis, the plaintiff, is the legal owner and in possession of the premises described in this petition, to wit: The oil and gas mining lease upon the northwest quarter (¼) of southeast quarter (¼) of section 27, township 19 north, range 12 east, Tulsa county, Oklahoma, and 800 feet of 6¼-inch casing, 2,400 feet of 2-inch casing, 2,000 feet of 2-inch lead pipe, 2,000 feet of 2-inch pipe, 75 feet of 10-inch casing, 2,400 feet of sucker rods, 2,400 feet of shackle rods, one 100-barrel and one 250-barrel wooden tank, 4 pumping jacks, one power plant complete, and other tools, appliances, fixtures and appurtenances belonging to and used in the operation of said oil and gas mining lease; and that his title thereto is valid and perfect and superior to any right or interest claimed by this defendant, and that this defendant has no right, title or interest in and to the said premises or the property thereon as above described.

"It is therefore considered, ordered and adjudged and decreed by the court that the title and possession of the said plaintiff in the said premises be and the same is hereby forever settled and quieted in the plaintiff as against all claims or demands by the said defendant or those claiming or to claim under him, and that all deeds or documents in said chain of title claimed by the defendant be and the same are hereby canceled and removed as clouds on the title of said plaintiff, Joe Davis, in and to the above described premises.

"It is further ordered, adjudged and decreed that the said defendant, G. W. Sanders, and those claiming through, by or under him, be and they are hereby perpetually enjoined and forbidden to claim any right, title, interest or estate in and to said premises by virtue of any deed or any other claim through which they assert title, hostile or adverse, to the possession and title of plaintiff herein; and the said G. W. Sanders and those claiming under him are hereby perpetually forbidden and enjoined from commencing any suit to disturb the said plaintiff in his said possession and title to said premises and from asserting any claim adverse to the title of plaintiff and from disturbing plaintiff in his peaceable and quiet enjoyment of the said premises above described; and it is further adjudged that the plaintiff have and recover his costs from this defendant."

The judgment of the trial court has gone beyond the prayer of the plaintiff and is inconsistent with the claims made by the plaintiff. In the petition plaintiff says:

"Plaintiff further alleges and states that since the above mentioned date, to wit: November 26, 1915, this plaintiff has been in possession and has operated the oil and gas mining lease above described, used in so doing all the tools, appliances and appurtenances thereunto belonging, as above specifically set out; that for some months past, after spending considerable money and time in an effort to get the property in a condition so that it might be operated upon a paying basis, this plaintiff is finally forced to the conclusion that said property cannot be made to produce oil in paying quantities —since the production is approximately one barrel per day and that this plaintiff cannot continue the operation of this lease except at a great and irreparable loss.

"Plaintiff further alleges and states that the oil and gas mining lease above referred to has been operated under the terms, provisions and conditions of a contract made and entered into on August 1, 1913, by and between the Texas Producing Company and H. S. Janowitz, wherein it was specifically provided that the lease should be in effect only so long as oil or gas should be found in paying quantities, and that upon the abandonment of said lease by the lessee, all of the personal property placed thereon by said lessee might be removed therefrom by the lessee without objection and with the consent of the lessor.

"Plaintiff further alleges and states that since the abandonment of said lease, he has gone upon the property with the purpose, intention and desire to remove all of the personal property hereinabove described and all of the personal property used in any manner in the operation of said lease and placed thereon by this plaintiff; but that he was prevented from so doing by the defendant. * * *"

Counsel for the defendant says:

"In this case, we are confronted by a novel situation. We have the plaintiff, who claims to be the owner of an oil and gas mining lease, which he, according to his own evi-

dence, had abandoned, seeking to quiet his title in and to said oil and gas mining lease, and to perpetually enjoin the defendant from interfering with him in going upon said property and removing therefrom casing and personal property located thereon, there being no privity of estate or contract between the plaintiff and the defendant. The defendant, being at the time in possession of said property, claimed the entire estate adversely to the plaintiff."

The petition should be considered as a whole.

Section 4766, Rev. Laws 1910, provides:

"In the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties."

While the plaintiff uses the term "abandon," the effect and meaning of the term, taken in connection with the petition as a whole, is to convey the idea that he had not abandoned the leased premises with the intention of surrendering his interest in the casing, piping, and other property placed on the premises in connection with the wells. All that he intended to say was that he had abandoned any hope of the wells producing oil in paying quantities, and thereupon he ceased operations, and when he sought to remove the personal property used in connection with the wells, he was prevented from doing so by the defendant. It is evident from the petition that all that plaintiff sought was an injunction restraining the defendant from interfering with him in removing the property. It is true he asks to have his title to the lease quieted and the court has quieted his title to the lease. We are satisfied in this particular the court has gone too far. The court is attempting, in the judgment, to do something not warranted by the allegations of the petition or the proof. On the trial the plaintiff testified "that the defendant could have the title to the premises; all that he wanted was the right to remove the casing, etc." There is no evidence that any royalty was ever demanded or paid either to Harnage or the defendant, and when the defendant on the witness stand was asked this question, "You have never gotten any royalty at any time from this lease, have you, Mr. Sanders?" he answered, "No, sir." Question: "To whom did you take it?" Answer: "To the Texas Company." The above is all the light there is upon the question as to the payment of royalty. The only claim that the defendant makes to the property sought to be recovered is by virtue of his being the purchaser at the sheriff's sale under the foreclosure of the mechanic's lien against Harnage. If the

lease was properly executed, and the court found that it was, and which finding is justified by the evidence, then, under the terms of the lease, the plaintiff, after discovering that oil could not be produced in paying quantities, had the right to cease operations and remove the property placed thereon in connection with the wells. He had the same right to go upon the premises leased for the purpose of removing this property that he had in the first instance in going upon the property for the purpose of developing the same under the lease, provided he acted within a reasonable time.

The courts of this country have frequently been called upon to determine the respective rights of the lessor and lessee in oil and gas mining leases similar to the one in the instant case, and it has been held that under such lease contracts the lessee has the right to possession of such parts of the surface of the land covered by the lease as may be reasonably necessary for the development and exploration of the leased premises for oil and gas or whatever mineral right may be covered by the lease, and the lessor has a right to possession of all the surface not reasonably necessary in the operation and exploration of such property by the lessee, and that both rights of parties will be protected by the injunctive power of the courts.

In Westmoreland Gas Co. v. DeWitt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731, Mr. Justice Mitchell says:

"The master finds, formally, that 'during several months prior to the filing of the bill Brown, claiming a forfeiture of said lease, had taken full and absolute possession of the premises and rights mentioned and granted in the lease.' An examination, however, of the evidence fails to disclose a single fact on which such finding can be sustained. It rests entirely on a misconception of the subject-matter of the possession in question and the nature of the possession itself of which the subject-matter is admitted. The subject of possession was not the land, certainly not the surface. All of that except the portions actually necessary for operating purposes were expressly reserved by the lease to Brown, the lessor. Except of such portions the complainant had no possession that was not concurrent with that of the lessor, if indeed it could be called possession of the land at all. Complainant's right in the surface of the land under the lease was rather in the nature of an easement of entry and examination with a right of possession arising where a particular place of operation should be selected and the easement of ingress, egress, storage, transportation, etc., during the continuance of the operation. The real subject of possession to which complainant was entitled under the lease was the gas or oil contained in, or

obtainable through, the land. * * * We are, therefore, of opinion that the master was wrong in finding as a fact that complainant was out of possession and should be remitted to an ejectment to establish its title at law. * * * " Thornton on Oil & Gas, vol. 1, sec. 110.

In Rennie v. Red Star Oil Company, 78 Okla. 208, 190 Pac. 391, it was held:

"It is strenuously contended that the lessee was not entitled to injunctive relief; that the remedy, if any, was by an action in replevin; in other words, that the lessee had a plain and adequate remedy at law.

"In considering this contention we should inquire as to the rights of the lessee under the terms of the lease. Under an oil and gas lease, the possession of the leased premises by the lessor and lessee is what might be termed a concurrent possession; that is to say, the lessee is entitled to enter upon the land leased and entitled to the possession of such parts and portions thereof as are necessary for developing the premises for oil and gas under the terms of the lease and to do the things necessary to make the operation successful."

The effect of the judgment appealed from is to place a cloud upon the title of the defendant to the premises; that is, to the land covered by the lease. In all probability the learned judge who tried the cause below did not intend the judgment to go to this extent, yet we cannot overlook the fact that the same is susceptible of this construction.

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to the trial court to render judgment in favor of the plaintiff and against the defendant, restraining and enjoining the defendant, his agents, servants, or employes, from in any manner molesting or interfering with the plaintiff, his agents, servants, or employes, in removing from said leased premises the following described property, to wit: 800 feet of 6¼-inch casing; 2,400 feet of 2-inch casing; 2,000 feet of 2-inch lead pipe; 2,000 feet of 2-inch pipe; 75 feet of 10-inch casing; 2,400 feet of sucker rods; 2,400 feet of shackle rods; one 100-barrel and one 250-barrel wooden tank; 4 pumping jacks, one power plant complete, and other tools, appliances, fixtures, and appurtenances belonging to and used in the operation of said oil and gas mining lease.

KANE, JOHNSON, McNEILL, and BAILEY, JJ., concur.