**HUMBLE OIL & REFINING CO. et al. v. WOOD. (No. 652—4519.)\***

(Commission of Appeals of Texas, Section B. March 16, 1927.)

**1. Damages ⚖️15—Compensation for actual loss resulting from breach of contract or tort is generally allowed.**

As a general rule, law allows compensation for actual damage, sustained in all cases of civil injury, resulting from breach of contract or from tort.

**2. Damages ⚖️20—Wrongdoer is responsible for "natural consequences" of wrongful act or omission.**

Wrongdoer is responsible for natural and probable consequences of wrongful act or omission both in actions on contract and tort; "natural consequences" being such as might reasonably have been foreseen.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Natural Consequences.]

**3. Damages ⚖️23—Only damages recoverable for breach of contract are those arising naturally from breach, or within parties' contemplation at time of contract.**

Only damages to which one party to contract is entitled because of other's breach are such as arise naturally from the breach itself, or as may be reasonably supposed to have been within contemplation of parties at time of making contract.

**4. Damages ⚖️20—Wrongdoer, unless willful, is liable only for such consequential injuries as should have been contemplated or anticipated, though particular form of injury need not have been anticipated.**

In case of torts not amounting to willful or wanton wrongs, wrongdoer is liable only for such consequences as were or should have been contemplated or foreseen according to common experience and usual course of events, though particular form or character of consequential injuries need not have been within wrongdoer's contemplation.

**5. Mines and minerals ⚖️73—Holder of oil and gas lease held not entitled to damages for owner's submerging land, temporarily preventing operations, where no oil or gas existed under surface.**

Holder of oil and gas lease *held* not entitled to damages for action of owner of land in temporarily submerging land to water, rendering it impossible at time to explore or operate mineral lease, where it appeared no oil or gas existed under surface, injury not being permanent.

**6. Mines and minerals ⚖️73—Damages held not recoverable for loss of market value of oil and gas lease by temporarily submerging land without permanent injury, where destruction of market value was not contemplated.**

Holder of oil and gas lease could not recover for destruction of market value of lease by reason of temporary submerging of land by owners, not causing permanent injury, where loss was not within contemplation of parties to contract as probable result of breach thereof, market value having arisen by virtue of nearby development project four years after lease.

**7. Damages ⚖️23—Contracting parties are presumed to have contemplated party injured by breach would sustain damages fairly resulting therefrom.**

Contracting parties are presumed to have contemplated that party injured by breach would sustain such damages as would fairly and substantially result from breach, in light of facts known or which should have been known at time of execution of contract.

**8. Mines and minerals ⚖️73—Damages for destruction of market value of oil and gas lease by temporary injury were recoverable only by proving loss of particular sale.**

To recover damages for temporarily submerging land, holder of oil and gas lease thereon, claiming destruction of market value during period land was submerged, was required to allege and prove actual damages by loss of particular sale, injury to prospecting rights not being permanent.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by L. J. Wood against the Humble Oil & Refining Company and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (277 S. W. 152), and defendants bring error. Judgment of District Court and Court of Civil Appeals reversed, and judgment rendered.

John C. Townes, Jr., of Houston, H. B. Daviss, of Corsicana, and Hines H. Baker, of Houston, for plaintiffs in error.

J. S. Simkins, of Corsicana, for defendant in error.

SHORT, J. The report of the opinion of the Court of Civil Appeals in this case is to be found in 277 S. W. 152. There was a majority and minority opinion rendered, and the facts are sufficiently set forth in the opinion of the majority of the court. Therefore, only a part of the record will be stated in this opinion. The defendant in error, L. J. Wood, was the owner of an oil lease on three blocks of land, each containing five acres, in what is known as the Powell oil field, in Navarro county, while the plaintiffs in error were the owners in fee simple of the land covered by the lease. The suit was filed July 31, 1923. Defendant in error alleged that he became the owner of the lease on the 10th of January, 1923, by purchase from the owner, one J. P. Moore, and that subsequent to the acquisition thereof the plaintiffs in error entered upon the lands together with adjoining property, and constructed a large earthen dam or dike, and submerged these blocks of land with water approximating five or six feet in depth, and located thereon pipe lines, boilers, and

pump station, and undertook to appropriate the entire surface of the three blocks of land, rendering the use of same practically worthless to the defendant in error, and making it practically impossible for him to operate and explore his mineral lease. He further alleged that the use made and sought to be made of the surface of said land by the plaintiffs in error destroyed the value of use of said lease in so far as the oil,. gas, and mineral interest was concerned, and—

"that the entry upon and use of said property now being made by defendants, and either or both of them, had resulted in great material damage and injury to this plaintiff in the sum of at least $15,000; that he could have heretofore sold and disposed of said lease at a highly advantageous point (meaning evidently price), but that the entry upon said property by the defendants, and either or both of them, destroyed the commercial value of said lease, and wholly destroyed the market value thereof."

The plaintiffs in error answered by general demurrer, special exception, general denial, and by special answers, denying that they had interfered with the development of the property for oil and gas purposes, and alleging that they had made every effort to make it in all things possible and practicable for the defendant in error to operate for the production of oil and gas and that they were the owners of the fee-simple title to said land, subject only to the outstanding ownership of minerals and the lease belonging to the defendant in error, and that they had not violated and had no intention of violating any rights of the defendant in error.

There was a trial by a jury with special issues submitted under the instruction of the court, and upon the return of the verdict a judgment was entered in favor of the defendant in error for the sum of $900 and costs. Upon appeal to the Court of Civil Appeals, this judgment was affirmed with a dissenting opinion by Justice Looney; whereupon application was made to the Supreme Court for writ of error, which was granted, the Supreme Court noting upon the application the following:

"It is not clear to us that under the undisputed facts the damages awarded were recoverable."

There are nine assignments of error in the application for writ of error, but in view of the disposition we shall make of the case it will not be necessary to refer to them serially. The testimony in the case is substantially without conflict. Both parties agree that the allegations in the petition of the defendant in error state a cause of action, founded on general damages as contradistinguished from special damages.

[1] In all cases of civil injury resulting from breach of contract or from tort, with certain exceptions not involved in this case, the law gives, as near as may be done, compensation for the actual loss sustained. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; 1 Sedgwick on Damages, 34, 45, 91, 125.

[2, 3] A wrongdoer is responsible for the natural and probable consequences of his wrongful act or omission, and this rule applies both in actions based on a contract as well as those on a tort. Natural consequences are such as might reasonably have been foreseen—such as occur in an ordinary course of things. The damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may be reasonably supposed to have been within the contemplation of the parties at the time of the making of the contract as a probable result of a breach thereof. Conversely, damages which do not arise naturally from a breach of the contract, or which are not within the contemplation of the parties, are not recoverable. These principles apply as well to an action arising from tort as from a violation of a contract. Speaking of torts, the general rule is that the wrongdoer is liable for any injury which is the natural and probable consequence of his misconduct. Such liability extends not only to injuries which are directly and immediately caused by his act, but also to such consequential injuries as, according to the common experience of men, are likely to result from such act. Except as to willful or wanton torts, the converse of this rule is also true, and the wrongdoer is liable only for the natural and probable consequences of his act.

[4] In the case of torts not amounting to willful or wanton wrongs, the general rule is that the wrongdoer is liable only for such consequences as were or should have been contemplated or might in the light of attending circumstances have been foreseen, or such as according to common experience and usual course of events might reasonably have been anticipated. The wrongdoer is also liable for the natural and probable consequences of his act or omission, although their particular form or character was not foreseen or anticipated; and it is not necessary that the particular consequences shall have been within the contemplation of the wrongdoer. 17 C. J. 746–750.

[5] The testimony in this case without contradiction shows that the obstruction on the land involved was not a permanent one, but that it continued only from the 24th of July to the 11th day of August, 1923. Under the testimony, before July 24, 1923, the plaintiffs in error had not done anything whereby the defendant in error's rights were injured, and, according to the testimony, after August 11, 1923, the plaintiffs in error did not do anything whereby the said rights were injured. So, whatever damages, if any, the defendant in error is entitled to recover must have been the result of injuries inflicted by the plaintiffs in error between the 24th of July and

the 11th of August, 1923. The only right claimed by the defendant in error was that to explore the three five-acre blocks of land for oil and gas and should any be found in paying quantities to take possession and dispose of it. Accompanying this right to explore and develop these three blocks of land was the incidental privilege to assign this right to some other person. The testimony is practically conclusive that no oil or gas existed under any of this land, and that, had the defendant in error been permitted' to exercise his right to explore it for such purpose, he would have reaped no substantial benefit therefrom, and the petition of the defendant in error was based upon allegations claiming that the plaintiffs in error had deprived him of this right. Conceding that these allegations were proved by the testimony—that is to say, from July 24th to August 11th, inclusive—the further testimony that no oil or gas existed under the surface, the effect of which is also conclusive, forces the further conclusion that the defendant in error suffered no damages by reason of this situation on account of being deprived of the right to explore the land for oil, since had he been given that right no benefit would have accrued to him. So, if the defendant in error is entitled to any recovery for the injuries alleged to have been done to him whereby damage resulted, it must be by reason of his allegation that:

"He could have heretofore sold and disposed of said lease at a highly advantageous point (price), but that the entry upon said property by the said defendants destroyed the commercial value of said lease and wholly destroyed the market value thereof."

[6] In other words, one of the general damages alleged to have resulted from the acts of the plaintiffs in error was the destruction of the commercial and market value of the lease. Evidently these allegations refer to general damages as well as to permanent injuries. It has been seen that the petition contains no averments of any special situation producing an unusual condition of affairs whereby this value was affected during this particular period and different from the situation existing at the time the lease was acquired on the property. And yet the testimony does show conclusively and ' without contradiction, conceding for the moment that the market or commercial value was proved by the testimony, that this value was the result of a situation which arose more than four years after the lease had been executed, and could not have been reasonably anticipated or to have been in the minds of the parties at such time.

The testimony shows that a well known as the Franko well was being bored at a point outside of the territory supposed to contain oil during the month of July, 1923, and that, had this development resulted in the production of oil, it would have increased the market value of the lease owned by the defendant in error. This Franko development was abandoned on August 10, 1923, and this abandonment resulted in the conclusion that no oil or gas existed on the land on which the defendant in error had a lease. The defendant in error himself testified on this subject as follows:

"I did have an agreement with Mr. Cannon with reference to the drilling of a well on that property. I will not be sure, but I think it was the 17th or 18th of July, 1923. I entered into a contract with Mr. Cannon whereby he was to drill a well on one of the five-acre blocks there, and I also had an agreement with him that after he started the well he would have a right to sell it, if he had an opportunity; and, further, in the event the Franko well came in a producer, he would go finish drilling it on a fifty-fifty basis—the first well. At the time I made this agreement with Mr. Cannon the Franko well had not come in; my recollection is that I made some investigation of that well, and from the log of the well it was down about 2,000 feet. I know that it was somewhere about the 10th of August when that well was finally abandoned at about 3,000 feet. My transaction with Mr. Cannon was on the 17th or 18th of July, and, in entering into that contract with Mr. Cannon, that Franko well was a material element of the discussion."

Further testifying on this subject, the defendant in error, says:

"I would say that the reasonable market value of my lease without the water on it between the 15th and 22d of July, 1923, was from $250 to $700 an acre—I would say that. I had an opportunity to sell my lease without the water on it. I had several opportunities to sell it. A party offered me $750 an acre for the lease if I would get the water drained off; that was about the 24th of July, right about that time, and that is the time I went to the Humble Company and tried to get the water drained off—that man's name was Mr. C. J. Spornitz."

Further testifying on this subject, the defendant in error says:

"At the time I made this agreement with Mr. Cannon, my primary idea and purpose was to have the derrick there and the machinery on the floor and to sell for a fancy price;. I thought as soon as we got the derrick up and the machinery on the ground that we could sell it."

The date of the original lease under which defendant in error acquired his rights was March 24, 1919. At this time and from this time up to the month of July, 1923, when the Franko well was being bored, the conditions affecting the market value of the lease owned by the defendant in error had no existence. As we have seen, the general rule is that the wrongdoer is liable for any injury which is the natural and probable consequence of his misconduct in cases of torts. 17 C. J. p. 751. While in cases of contracts, the rule is the same. That is to say, that the damages to

which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof. The converse of this general rule is that damages which do not arise naturally from the breach of the contract, or which are not within the reasonable contemplation of the parties, are not recoverable.

[7] In the application of this rule the parties will be presumed to have contemplated that the party injured by the breach of the contract would sustain such damages as would fairly and substantially, in the usual course of things, result from such breach, in the light of the facts known or which should have been known to them. So, we conclude that, conceding that the defendant in error had a preferential right superior to that of the plaintiffs in error to the exclusive possession of the land necessary to be used by him in exercising his rights, in the absence of special pleading alleging the particular facts necessary to be established to entitle the plaintiff to recover, there was no basis for the introduction of any testimony tending to establish the existence of such facts; and, as we have said, we have serious doubts even with such pleading that the defendant in error discharged his burden of showing that these blocks of land had a market value at the time that the plaintiffs in error had the land covered with water. The interference, if any, with the legal rights of the defendant in error upon the part of the plaintiffs in error was temporary, conceding the full effect of the testimony of the defendant in error as claimed by him. The injury was not permanent. This injury could not have been reasonably within the contemplation of the parties at the time the lease was executed, since the conditions which brought about the injury could not reasonably have been foreseen, and therefore could not have been reasonably within the contemplation of the parties. The sole and only purpose of the parties to the lease was to enable the owners of the lease to mine and operate the land for oil and gas and of laying pipe lines and building tanks, power stations, and structures thereon to produce, save, and take care of whatever oil and gas might be produced from said mining operations. All other rights were reserved to the grantor, and these rights were acquired by the plaintiffs in error, who were the owners of the fee-simple title to the land, and as such owners were entitled to use it in whatever way they saw proper, subject only to the rights of the defendant in error acquired by virtue of the lease.

[8] It is our opinion that the general rule as to damages for such obstructions which is applicable to the doctrine of easements should apply, since the injuries of which complaint is made are not permanent, but temporary, and that the defendant in error should have alleged and proved as a proximate result of the act of the plaintiffs in error he had sustained actual damages to that extent by being prevented from making a particular sale, which, as we have seen, was not done in this case. Thornton's Law of Oil and Gas (3d Ed.) vol. 2, § 858; Sanders v. Davis, 79 Okl. 253, 192 P. 694; Rennie v. Red Star Oil Co., 78 Okl. 208, 190 P. 391; Humphreys Oil Co. v. Liles (Tex. Com. App.) 277 S. W. 100; Big Sandy Railway Co. v. Bays (Ky.) 102 S. W. 302; Freeman v. Sayre, 48 N. J. Law, 37, 2 A. 650; Neff v. Philadelphia Railway Co., 202 Pa. 371, 51 A. 1038; 1 Tiffany, Landlord and Tenant, § 85.

We think the dissenting opinion rendered by Judge Looney of the Court of Civil Appeals correctly disposes of the case, and that in so far as the majority opinion differs therefrom it does not, and we therefore recommend that the judgments of the Court of Civil Appeals and of the district court should be reversed and judgment rendered in favor of plaintiffs in error.

CURETON, C. J. Judgment of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiffs in error, as recommended by the Commission of Appeals.