RICKS EXPLORATION COMPANY,
Plaintiff-appellant,

v.

OKLAHOMA WATER RESOURCES
BOARD, Defendant-appellee,

and

RICKS EXPLORATION COMPANY,
Plaintiff-appellant,

v.

OKLAHOMA WATER RESOURCES
BOARD, Defendant-appellee.

Nos. 58350, 59172.

Supreme Court of Oklahoma.

Oct. 16, 1984.

As Corrected Oct. 16, 1984.

Rehearing Denied Feb. 26, 1985.

Sheryl L. Stevens, Musser & Bunch, Oklahoma City, for plaintiff-appellant.

R. Thomas Lay, Dean A. Couch, Oklahoma City, for defendant-appellee.

OPALA, Justice.

The first-impression question presented for review is: Does a mineral lessee have standing before the Oklahoma Water Resources Board to seek a *non-domestic* groundwater use permit under the Oklahoma Groundwater Law, 82 O.S. 1981 §§ 1020.1 et seq.? We answer in the affirmative.

Ricks Exploration Company [Ricks], mineral lessee from a severed mineral estate-holder applied to the Oklahoma Water Resources Board [Board] for both a provisional temporary permit and a special permit to withdraw fresh groundwater from the land subject to its lease for use in its oil-and-gas operations. Both permits were denied. These rulings were affirmed by the district court. Ricks brought separate appeals from the two judgments.

I

PROCEDURAL FRAMEWORK

A. *Rick's First Appeal*

Ricks sought a provisional temporary permit for groundwater use which, under the Board's rules,[1] its Executive Director

---

1. Rules, Regulations and Modes of Procedure of the Oklahoma Water Resources Board, Rule 840.7.

The terms of 82 O.S. 1981 § 1020.10 provide in pertinent part that:

" * * * [A] provisional temporary permit for water may immediately be granted upon administrative approval by the Oklahoma Water Resources Board. This permit will not be effective for a period of more than sixty (60) days."

[Director] may issue, without a hearing, absent a protest. This type of permit differs from all others. It may be granted by the director on a purely discretionary basis and in an ex parte proceeding. If a protest is lodged by an interested party, permits of this genre cannot issue ex parte. In a response to Ricks' application, the Board's general counsel explained in a letter that its request could not be acted upon ex parte because a protest had been lodged by surface owners. He added that "due process" considerations necessitated that a hearing be afforded upon the issues raised. In addition to explaining the director's discretionary authority, the general counsel further noted that Ricks, in effect, did not have standing to apply for a permit because § 1020.11(D) of the groundwater law [2]—as interpreted by the Board's rules [3]—limited the class of applicants to surface owners or those having a valid permit or consent from the surface owner to withdraw groundwater from the underlying basin or subbasin. The general counsel then suggested that Ricks apply for one of the other three permits,[4] approval of which is a matter for consideration by the Board, after hearings and a determination that the applicant meets statutory conditions.[5] Upon receipt of the letter, Ricks appealed to the district court from the director's ruling.

The district court dismissed the appeal without prejudice to Rick's efforts to obtain another permit under the groundwater law. Its decision was based upon a construction of § 1020.11(D) which accorded with that of the Board's. Ricks then brought its first appeal [58,350].

■■■ The first appeal is fraught with a patent procedural infirmity. *Firstly*, the district court was without jurisdiction to review the director's *ex parte* ruling, because this decision did not amount to an appealable order. The applicant remained entirely free to press the Board for an adversary hearing on its application for a groundwater permit and for a consideration of the issues in conformity with the minimum standards of due process. The action of the director did not preclude the applicant from proceeding further before the Board; nor did the director's letter amount to a *final* disposition of an individual proceeding within the meaning of 75 O.S. 1981 § 318(1).[6] Because by law the Board's authority to regulate groundwater use and to issue permits allowing its withdrawal is exclusive, the district court is without original cognizance over these matters. The district court's jurisdiction, which is appellate only, stands confined by statute to review of final agency orders.[7] When an appeal is lodged from some interlocutory agency action, the district court must dismiss the proceeding for want of

**2.** See Part II, supra, for text of § 1020.11(D).

**3.** The Board's Rule 815.6 (before its amendment on May 3, 1972) provided that:
"Except as provided by 82 O.S. (Supp.1972) § 1020.21, no permits shall be issued to an applicant who does not own the land on which the well is to be located, or hold a valid lease right from the owner of the ground water permitting withdrawal of water from such basin or subbasin. A copy of the written permission shall be attached to the application."
In its amended form, Rule 815.6 now provides:
"Except as provided in 82 O.S. 1020.21 no permit shall be issued to an applicant who is not the surface owner of the land on which the well is to be located, or hold a valid right from such surface owner permitting withdrawal of water. A copy of the written permission shall be attached to the application."

**4.** The groundwater law also authorizes the issuance of three other types of permits—regular, temporary and special. 82 O.S.1981 § 1020.-11(A–C).

**5.** 82 O.S.1981 §§ 1020.8 and 1020.9. See also Board Rules 830.1–830.8 and 835.1.

**6.** The terms of 75 O.S. 1981 § 318(1) provide in pertinent part:
"(1) Any person or party aggrieved or adversely affected by a *final order in* an individual proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act ..." [emphasis added]
See also *Conoco, Inc. v. State Dept. of Health, Inc.*, Okl., 651 P.2d 125, 127 [1982].

**7.** *Bryan v. Seiffert*, 185 Okl. 496, 94 P.2d 526, 531 [1939].

subject-matter jurisdiction. Should it fail to do so, this court will on appeal direct that a dismissal be effected.[8] *Secondly,* the journal entry of judgment reflects that the issues adjudicated by the trial judge in the first appeal were broader than those raised by the record. The validity of the Board's rules was not raised as an issue before the agency and the letter from the general counsel to Ricks could not make it an issue. In an individual proceeding issues are formed by the instruments filed by the parties or by the evidence adduced. When issues adjudicated in a § 318 appeal are broader than those presented to the agency, the district court's action operates to invade the forbidden arena of the Board's original cognizance.[9] *Thirdly,* the cause was not brought before the district court as an original declaratory suit to review the validity of the Board's rules under the provisions of 75 O.S. 1981 § 306.[10] Declaratory relief may not be invoked as a substitute for an appeal by one who has been aggrieved by an adverse agency ruling.[11]

 Parties to an action cannot by agreement so frame the issues as to extend them beyond the jurisdiction of the tribunal.[12] This court cannot affirm a district court decision which—based on the issues raised—would give the district court a sweep of cognizance broader than that sanctioned by law.[13] We must hence notice *sua sponte* the jurisdictional defect[14] and direct that, upon remand, the district court modify its decision by effecting a dismissal of the case for want of jurisdiction. In this

manner the proceeding will stand terminated by a decision *dehors* the merits of the case.

### B. *Ricks' Second Appeal*

After the denial of his first application, Ricks then sought a special permit from the Board. The Board denied the second application following a hearing. In its order, the Board expressed the view that Ricks did not have standing *qua* landowner to seek a groundwater permit and found that Ricks had not obtained permission of the surface owners to withdraw and use fresh groundwater. Rick's second appeal to the district court was brought from a final Board determination under 75 O.S. 1981 § 318(a).[15] The district court held adversely to Rick's position, adopting as a basis for its decision the reasoning upon which the first Rick's appeal was rested. The second appeal [59,172] to this court followed.

## II

## PUBLIC LAW AND PRIVATE LAW CONSIDERATIONS

Ricks contends that it qualifies as a landowner within the meaning of § 1020.11(D) and that it has a right of reasonable use of the groundwater in connection with its oil-and-gas operations. The Board argues that the statute prohibits the issuance of any permit to an applicant who is neither the surface owner nor someone with the surface owner's consent to withdraw the groundwater.

---

**8.** *Barker v. Daniels,* 195 Okl. 690, 161 P.2d 854, 855 [1945].

**9.** *Bryan v. Seiffert,* supra note 7.

**10.** The terms of 75 O.S. 1981 § 306 provide in pertinent part:
"The validity or applicability of a[n] [agency] rule may be determined in an action for declaratory judgment in the district court ... if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff ..."
The district court's journal entry, while acknowledging that the appeal was from an ad-

verse agency action, mischaracterized the proceeding as one for declaratory judgment.

**11.** *Conoco, Inc. v. State Dept. of Health, Inc.,* supra note 6.

**12.** *Bryan v. Seiffert,* supra note 7, 185 Okl. at 532, 94 P.2d 526.

**13.** *Bryan v. Seiffert,* supra note 7, 185 Okl. at 531–532, 94 P.2d 526.

**14.** *Barker v. Daniels,* supra note 8.

**15.** See footnote 6, supra, for text of § 318(1).

The controversy centers on the Board's interpretation of the groundwater law and on the nature of the mineral lessee's claim to the use of the water. Our analysis of this public/private law dichotomy requires that we first determine whether a mineral lessee has a private-law right to the use of groundwater and, if so, to what extent that right may have been affected by the groundwater law.

▆▆▆▆▆ The ownership of oil-and-gas carries with it by implication the means of enjoying the mineral estate.[16] It is well established that the owner of oil-and-gas interest has the right to enter upon and make reasonable use of the surface in exploring for and extracting the mineral deposits.[17] Any limitation upon the right of entry or the right to extract minerals is in derogation of this common-law interest. While it is clear that the owner of the surface estate also owns the underlying fresh groundwater (60 O.S. 1981 § 60),[18]

his proprietary interest in the water is limited by the mineral owner's right to use reasonable amounts of the water for production of minerals.[19] A grant of these common-law interests is included within the cluster of rights created by an oil-and-gas leasehold estate.[20]

The sole object of the groundwater law, enacted in 1972, appears to be the regulation and control of nondomestic use of groundwater. The Act provides for the allocation of water to each acre of land overlying fresh water basins or subbasins. Before a permit may be issued, the Board must first make the allocation and then determine whether the applicant meets the statutory requirements for a groundwater permit.[21] At issue here is whether Ricks meets the "ownership" requirement of § 1020.11(D).[22] That section provides in pertinent part:

" * * * D. Except as provided in Section 1020.21 of this title, no permits shall

---

**16.** *Melton v. Sneed*, 188 Okl. 388, 109 P.2d 509, 512 [1940]; *Wilcox Oil Co. v. Lawson*, Okl., 341 P.2d 591, 595 [1959]; *Hinds v. Phillips Petroleum Co.*, Okl., 591 P.2d 697, 698 [1979]; see also Kuntz, Law of Oil and Gas, § 3.2 [1962].

**17.** *Melton v. Sneed*, supra note 16, 109 P.2d at 512; *Wilcox Oil Co. v. Lawson*, supra note 16 at 595; *Sanders v. Davis*, 79 Okl. 253, 192 P. 694, 697 [1920]; *Cities Service Oil Co. v. Dacus*, Okl., 325 P.2d 1035, 1036 [1958]; see Kuntz, supra note 16 at § 3.2.

**18.** The terms of 60 O.S. 1981 § 60 provide in pertinent part:
*"The owner of the land owns water standing thereon, or flowing over or under its surface* but not forming a definite stream.... provided further, that nothing contained herein shall be construed to limit the powers of the Oklahoma Water Resources Board to grant permission to build or alter structures on a stream pursuant to Title 82 to provide for the storage of additional water the use of which the landowner has or acquires by virtue of this Act." [Emphasis added].

**19.** Extant case law supports the principle that a person who owns minerals has, as an incident of his ownership, the right to use water. *Mack Oil Co. v. Laurence*, Okl., 389 P.2d 955, 961–962 [1964] (fresh groundwater); *Holt v. Fifth Enlarged Southwest Antioch Sand Unit*, Okl., 292 P.2d 998, 1000 [1956]; *Wilcox Oil Co. v. Lawson,*

supra note 16; *Cities Service Oil Co. v. Dacus,* supra note 17. See also Kuntz, Law of Oil & Gas, §§ 3.2 and 50.2 [1962].

In *Holt,* supra, the court held that the surface owner's estate was burdened by the mineral owner's right to use what was reasonably necessary for proper development of the mineral estate, including the right to the use of salt water for secondary recovery.

**20.** *Hinds v. Phillips Petroleum Co.,* Okl., 591 P.2d 697, 698 [1979].

**21.** The statutory requirements an applicant must meet under the § 1020.9 standards are: (a) a showing that "the lands owned or leased by the applicant" and from beneath which the groundwater is to be withdrawn overlie a fresh groundwater basin or subbasin; (b) a showing that the applicant's intended use is a "beneficial use"; and (c) a showing that "waste" will not occur by virtue of the applicant's intended use. (d) The fourth requirement, under § 1020.11(D), is that the applicant "own the land on which the well is to be located, or hold a valid lease from the owner of such land permitting withdrawal of water from such basin or subbasin".

**22.** The parties are in agreement that Ricks meets the first three criteria, supra note 21, for a groundwater permit. See *Texas County Irrigation v. Cities Service Oil Co.,* Okl., 570 P.2d 49, 51 [1977], for authority that under the Act the

be issued to an applicant who does not own the land on which the well is to be located, or hold a valid lease from the owner of such land permitting withdrawal of water from such basin or subbasin."

By interpreting this section to exclude owners of interest other than surface from the allowable class of applicants, the Board in effect has placed the mineral owner in the position of having to bargain with the surface owner for what is recognized as his common-law right of free access to reasonable use of groundwater for oil and gas purposes. In order to reach the result sought by the Board, we would have to conclude that the Act operates to alter private commonlaw rights of the mineral owner. We cannot so hold.

▮▮▮▮ A mineral owner's claim to groundwater use is a "vested right" created by common law.[23] Once created, it becomes absolute, and is protected from legislative invasion by Art. 5 §§ 52 and 54, Okl. Const.[24] A vested interest will not be deemed abrogated or impaired except by explicit legislative extinguishment effective prospectively.[25] Laws depriving a party of private rights should be strictly construed.[26]

▮▮▮▮ Section 1020.11(D) does not manifest legislative intent to alter a mineral owner's private interest in groundwater use. In ascertaining what class of applicants meets the § 1020.11(D) "ownership test", the Board may not ignore those interests in groundwater which are cognizable at common law and remain unaltered by statute. If the legislature had chosen to alter the mineral owner's claim to groundwater, it would have made that right subject to the sole discretion of the surface owner, or it might have established a scheme by which the surface owner was to be compensated for the use of the water.[27] It seems clear that neither of these courses was intended by any of the explicit or implicit provisions in the Act.

▮▮▮▮ Public law will not be interpreted as legally destroying private rights by inference.[28] Absent some clear statutory mandate, we are powerless to strike down a valuable right cognizable at common law merely upon an inference sought to be drawn from a public-law statute. When a statute is susceptible of more than one construction, it must be given that which makes it free from constitutional doubt rather than one which would make it fraught with fundamental-law infirmities.[29]

use of fresh groundwater for secondary oil recovery does not constitute waste *per se.*

**23.** *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* Okl., 464 P.2d 748, 755 [1969]. A "vested right" is the power to do certain actions or possess certain things lawfully, and is substantially a property right. It may be created either by common law, by statute or by contract. See also *Crump v. Guyer,* 60 Okl. 222, 157 P. 321, 322 [1916].

**24.** *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* supra note 23.

**25.** *Roxana Petroleum Co. v. Cope,* 132 Okl. 152, 269 P. 1084, 1086 [1928]; *Republic Bank & Trust v. Bohmar Minerals,* Okl., 661 P.2d 521, 524 [1983].
The terms of 60 O.S. 1981 § 60, supra note 18, which provide that the owner of the land owns the underlying fresh groundwater, appear to be merely declaratory of the common law. Standing alone, they cannot operate to abrogate the mineral lessee's common-law claim to a reason-

able use of groundwater for development of the mineral estate.

**26.** *Roxana Petroleum Co. v. Cope,* supra note 25; *Republic Bank & Trust v. Bohmar Minerals,* supra note 25.

**27.** When the legislature sought to affect the mineral owner's common-law right of free access and reasonable use of the surface for oil-and-gas purposes in the 1982 Surface Damages Act, it clearly and explicitly expressed this purpose in the Act. There, the legislature—by a comprehensive mandated procedure—set forth what must be done by the mineral owner before entry upon the surface. It prescribed that payments are to be made to the surface owner for certain damages to the surface from operations thereon. We express here no view upon the constitutionality of this Act.

**28.** *Roxana Petroleum Co. v. Cope,* supra note 25.

**29.** *Neumann v. Tax Commission,* Okl., 596 P.2d 530, 532 [1979]; *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 [1979].

Where vested rights are acquired under existing laws, there is no branch of government which may take them away except by due process of law. The due process clause of our constitution, Art. 2 § 7, Okl. Const., prevents state authority from depriving an individual of property without just compensation.[30] Conduct of an administrative body acting in its adjudicative capacity constitutes state action within the meaning of the due process clause.[31] If we were to espouse the Board's view, we would be subjecting private rights to destruction by a public body without any compensation. By stripping mineral owners of standing, the Board allows surface owners to invoke the machinery of the state to destroy private rights.[32] The state's power cannot be used to extinguish existing private rights which remain unabolished by the legislature. Neither may long-standing administrative construction deter us from this view. Fundamental rights cannot be abolished by contrary judicial practices no matter how long they have continued.[33] Here the Board's construction of § 1020.11(D)—which allows only surface owners to apply for a groundwater permit—operates as a vehicle of "taking" by destruction of rights which even the legislature could not abrogate except by explicit legislation operating only prospectively.

Mineral lessees have a quantum of recognizable proprietary interest in the reasonable nondomestic use of groundwater. That interest is sufficient to place them in the category of "owners" within the meaning of § 1020.11(D). They cannot, for lack of standing, be barred from access to agency process for the purpose of pursuing an application for groundwater permit.

The judgment under consideration in the first appeal [58,350] is reversed with directions to dismiss the case for want of subject matter jurisdiction. The trial court's judgment under review in the second appeal [59,172] is also reversed and the cause is remanded with directions to afford the mineral lessee standing as an applicant for a groundwater permit.[34]

BARNES, C.J., LAVENDER, DOOLIN, and HARGRAVE, JJ., and YOUNG, S.J., concur.

HODGES, WILSON and KAUGER, JJ., dissent.

SIMMS, V.C.J., certified his disqualification and YOUNG, S.J., was assigned to sit by designation.

ALMA WILSON, Justice, dissenting:

Whether or not a mineral lessee seeking to appropriate surface water, without the consent of the surface landowner, has standing before the Oklahoma Water Resources Board is properly governed by the law in force at the time application is made.

Title 60 O.S. 1981 § 60 provides as follows:

*"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream . . .;* provided further, that nothing contained herein shall be construed to limit the powers of the Oklahoma Water Resources Board to

---

**30.** The terms of Art. 2 § 7, Okl. Const., are: "No person shall be deprived of life, liberty, or property, without due process of law."

**31.** *Wolfenbarger v. Hennessee,* Okl., 520 P.2d 809, 811–812 [1974]; *Shelley v. Kraemer,* 334 U.S. 1, 14, 68 S.Ct. 836, 852, 92 L.Ed. 1161 [1948].

**32.** Art. 2 §§ 23 and 24, Okl. Const.; see also *Shelley v. Kraemer,* supra note 31, 334 U.S. at 19–20, 68 S.Ct. at 845.

**33.** *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 [1969].

**34.** The statute does not specify, nor do we need to be concerned here with, the extent of reasonable use by a mineral lessee of groundwater for various phases of oil-and-gas development and production. The statutory criteria prohibit waste, require application of water to a reasonable or beneficial use and prevent impairment of vested rights. It is the Board's responsibility to allocate the groundwater and to issue permits based upon these statutory criteria and upon other competing uses for the underlying groundwater basins and subbasins as between the surface and mineral estates.

grant permission to build or alter structures on a stream pursuant to Title 82 to provide for the storage of *additional water the use of which the landowner has or acquires by virtue of this Act."* (Emphasis added.)

The owner of the land is thus vested with absolute ownership of the surface waters upon his land. This vested property right is in no way limited by common law principles. The distinction rests upon cognizance of the disparity between entry upon the land/reasonable *use* of the surface of the *land,* as opposed to a lessee's appropriation of *water itself,* belonging to the landowner.

An owner of an oil and gas *interest* is not the owner of the land. While the owner of oil and gas interests may enter upon and make reasonable use of the *land surface* in connection with exploring for and extracting mineral deposits, he is not entitled to ex-parte appropriation of the landowner's property to his own use without just compensation. Non-consensual impairment of a landowner's vested property right to the surface waters upon his land constitutes an unconstitutional taking. Accordingly, 82 O.S. 1981 § 1020.11(D) provides:

"...D. Except as provided in Section 1020.1 of this title, no permits shall be issued to an applicant who does not own the land on which the well is to be located, or hold a valid lease from the owner of such land *permitting* withdrawal of water from such basin or subbasin."

(Emphasis added.)

Water is a valuable natural resource, having a definite economic value. Where a fixed quantity of water is appropriated for use to the overlying surface owner, serious disputes often arise. Consider for example, the conflict between an irrigator-surface owner who intends to use or is using the full amount of water apportioned to his acreage, and a mineral lessee who intends to use a quantity of the same water to carry on his oil and gas operations. Such conflicts are better resolved contractually through purchase or lease of water rights.

Their resolution is not contemplated by the Oklahoma Ground Water Law.