## ARTHUR D. ROGERS
### *vs.*
## DEXTER AND PISCATAQUIS RAILROAD COMPANY.
### Piscataquis.    Opinion April 1, 1893.

*Railroad.    Sub-Contractor.    Lien.    R. S., c, 51, § 141.*

The statute provision (R. S., c. 51, § 141,) which imposes a liability on railroad corporations to pay for the work of laborers employed in constructing their roads, does· not apply to the labor of a sub-contractor personally expended with that of a crew employed by him upon a section of a railroad which he has contracted to build.

ON REPORT.

*H. Hudson* and *J. S. Williams,* for plaintiff.

Statute general and applies to all laborers. *Hart* v. *R. R.* 121 Mass. 510; *Lyon* v. *R. R.* 127 Mass. 101; *Parker* v. *R. R.* 115 Mass. 580; 1 *Redf. R. R.* *586, and notes; *Kent* v. *R. R.* 12 N. Y. 628; *Aiken* v. *Wasson,* 24 N. Y. 482; *Balch* v. *R. R.* 46 N. Y. 521.

*J. B. Peaks,* for defendant.

PETERS, C. J.    The defendant railroad company contracted with Brown Brothers & Company for the entire construction of its railroad.    Brown Brothers & Company contracted with one Tucker for a certain amount of the grubbing and filling in such construction.    Tucker contracted with the plaintiff for a certain amount of the grubbing (embraced in his contract with Brown Brothers & Company) at a fixed price per square yard.    The plaintiff employed other men and labored personally with them, in doing the grubbing he had contracted to have done.    Tucker did not pay the plaintiff as provided in the contract, and the. plaintiff has now brought this action against the railroad company to recover, not the contract price, but only the amount of his personal labor in such grubbing.    He bases his claim to recover on R. S., c. 51, §, 141, which reads as follows :

"Every railroad company, in making contracts for the building of its road, shall require sufficient security from the con-

tractors for the payment of all labor thereafter performed in constructing the road by persons in their employment; and such company is liable to the laborers employed, for labor actually performed on the road, if they, within twenty days after the completion of such labor, in writing, notify its treasurer that they have not been paid by the contractors. But such liability terminates unless the laborer commences an action against the company, within six months after giving such notice."

This statute was evidently intended, not for the benefit of contractors, but for the benefit of laborers. The railroad company is made liable to laborers only. The question, therefore, is whether one who contracts to do a certain specific portion of the work of construction of a railroad, and personally labors in the performance of his contract, along with others hired by him for the same purpose, is a "laborer employed," within the meaning of the statute.

Etymologically the word "laborer" may include any person who performs physical or mental labor under any circumstances; but its popular meaning is much more limited. The farmer toiling on his own farm, the blacksmith working in his own shop, the tailor making clothes for his own customers, is not called a laborer. One who performs physical labor, however severe, in his own service or business, is not a laborer in the common business sense. A contractor, who takes the chance of profit or loss, is not a laborer in that sense.

In the language of the business world, a laborer is one who labors with his physical powers in the service and under the direction of another for fixed wages. This is the common meaning of the word, and hence its meaning in the statute.

The plaintiff in this case performed his labor in his own business. He was responsible only for the performance of his contract.

The means for such performance were of his own choice. He need not personally have performed physical labor at all. He could have employed all, as well as a part, of the necessary labor. What physical labor he did perform, was not for

wages, but to reduce the expenses and increase the hoped for profits of his contract. He clearly was not a laborer within the common and statute meaning of the term.

Authorities are not wanting to sustain this interpretation of the statute. The word "laborer" in similar statutes has received a similar interpretation in other jurisdictions. *Aiken* v. *Wasson*, 24 N. Y. 482; *Balch* v. *R. R. Co.* 46 N. Y. 521; *Vane* v. *Newcombe*, 132 U. S. 220; *Weymouth* v. *Sanborn*, 43 N. H. 171. Also in the China Treaty, *In Re Ho King*, 14 Fed. Rep. 724.

It is urged that the statute should be liberally construed, being remedial and intended to prevent hardships. This may be so as to the class to which it clearly relates. It should not be stretched, however, to include a class not within the common meaning of its language. *Lord* v. *Woodard*, 42 Maine, 497.

*Judgment for defendant.*

VIRGIN, LIBBEY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.