FARMER, Appellant, vs. ST. CROIX POWER COMPANY, imp.,
Respondent.

*February 6—February 24, 1903.*

(1, 2) *Trial: Findings: Duty of court: Reversible error.* (3-5)
*Liens: Construction of statutes: Subcontractor or employee?*

1. Upon trial of a question of fact by the court the parties are en-
titled, under sec. 2863, Stats. 1898, to a finding of fact upon
each material issue raised by the pleadings, and to findings in
reasonable detail covering all matters as to which there is a
reasonable controversy respecting whether they have a mate-
rial bearing upon the rights of the parties or not; and are en-
titled, also, to the decision of the trial judge specifically upon
the minor questions of law applicable to the facts found upon
which the ultimate conclusion of law must rest.
2. Failure to make findings and conclusions as above indicated is
error, but will not work a reversal unless it appears probable
that the substantial rights of the unsuccessful party may
thereby have been injuriously affected.
3. Secs. 3314, 3315, Stats. 1898, giving a lien to every "principal
contractor," "subcontractor of a principal contractor," or "em-
ployee of either," who performs work, etc., for, in, or about the
erection of certain structures, provides for three distinct
classes of persons, and the terms used should be construed ac-
cordingly.
4. Plaintiff agreed with a subcontractor to do all the hauling nec-
essary for the execution of the latter's contract, the amount of
such hauling being very large and necessitating the employ-
ment by plaintiff of a large number of teams and men. The
agreement did not bind plaintiff to any personal service. *Held,*
that he was not an employee of the subcontractor, but was a
subcontractor in the second degree, not entitled to a lien under
secs. 3314, 3315, Stats. 1898.
5. The fact that plaintiff's servants acted more or less under the
direction of the subcontractor, who gave them orders as to
where materials should be unloaded, etc., did not make the
plaintiff an employee of the subcontractor.

APPEAL from a judgment of the circuit court for St. Croix
county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action to enforce a lien under sec. 3315, Stats. 1898. The

complaint contained the necessary formal allegations to sat-
isfy the statute. Those respecting competency of the plaintiff
to enjoy the benefit of the lien statute were to the effect that
the proprietor was the defendant *St. Croix Power Company;*
that it contracted the entire work, of which that done by
plaintiff formed a part, to Robert N. King; that King sublet
the work to the Engineering Contract Company; that plaint-
iff was employed by such company to and did "perform work,
labor and services in and about the construction and erection
of" the particular structures and improvements included in
the principal contract at the agreed price of $9,419.05, and
that all thereof except $5,279.50 was unpaid.

The exact nature of the contract of employment, as regards
whether plaintiff was an employee of the subcontractor, or
whether his services were rendered in and about the erection
of the structures and improvements to be produced under the
principal contract as alleged, as shown by the evidence, is in-
dicated by the findings of the court, which are substantially
as follows: Plaintiff agreed with one Louis L. Brown, claim-
ing to act for the Engineering Contract Company in respect
to all of the structures to be produced under the principal
contract, except the flume, "to haul cement from the Somer-
set Station on the Wisconsin Central Railroad, to a point
near the Apple River Falls . . . for the sum of thirty-
five cents for each four hundred pounds," the cement to be
delivered as fast as needed and the amount to be required to
be hauled each day not to exceed 200 barrels of 400 pounds
each. The agreement was in writing and contained this pro-
vision:

"It is further agreed that the said party of the second part
shall have the sole hauling of the entire amount of cement
needed, which he shall deliver as above specified; and should
he fail to deliver the same as above specified, the party of the
first part is hereby authorized by the said party of the second
part to haul the said cement and to charge the cost of said
hauling to the account of the said party of the second part."

At or about the time said contract was made, plaintiff agreed verbally with persons claiming to act for the Engineering Contract Company to do all the hauling necessary for the execution of the principal contract respecting the flume, and not embraced in the written contract, for $6 per day per man and four-horse team. The undisputed evidence was to the effect that the amount of material to be hauled under the contract and which was actually hauled was very large; that it was hauled from points several miles from the location of the improvement; that the contract did not contemplate that the hauling should be done, and it in fact was not done, by the personal labor of plaintiff; that in the execution of the contract plaintiff used twenty to thirty horses and a number of employees; in short, that the work was let to plaintiff as a distinct part of that necessary to execute the principal contract—let to him as a whole—as a distinct job, so called—to be done, not by himself personally, but under him as the responsible party by such servants, teams and appliances as he might choose to employ.

The findings contain a copy of the written contract; a copy of the notice given to comply with the requirement of the statute as to a subcontractor or employee of a subcontractor, giving notice to the proprietor, of his claim for a lien; a copy of the lien petition; a copy of the affidavit for the order of publication upon which services of the summonses as to the principal contractor and subcontractor were based; a copy of such parts of the order of publication as were challenged by the defendant *St. Croix Power Company* as insufficient; a finding to the effect that a large number of the items included in plaintiff's claim were not lienable and manifestly so under any reasonable theory; a finding that the sum of $3,868.65 was due plaintiff for work under his contracts; a finding to the effect that the evidence left it unascertainable as to how much of the work performed by plaintiff was in delivering material upon the premises in

question for use in the production of the improvements covered by the principal contract, or what part of the material hauled by plaintiff was so used, or when the last lienable work was done, if any of the same was lienable, and that a material portion thereof at least was not lienable under any circumstances. There was a general conclusion that the *St. Croix Power Company* was entitled to judgment against plaintiff dismissing said action as to it, with costs. The court found that plaintiff was entitled to judgment against the Engineering Contract Company for the indebtedness established as aforesaid, with interest and costs, and that judgment should go against plaintiff as to the other defendants, with costs. Judgment was entered accordingly.

　*A. J. Kinney,* for the appellant.

　For the respondent there were briefs by *Baker & Haven,* attorneys, and *F. W. M. Cutcheon,* of counsel, and oral argument by *H. C. Baker* and *Spencer Haven.*

　MARSHALL, J. In the disposition of this case these important questions, among others, were presented for adjudication: (1) Is hauling material for use in making a structure or creating an improvement such as is mentioned in sec. 3314, Stats. 1898, the performance of labor "for, in or about the erection or construction" of such structure or improvement? (2) Is a person who makes a contract to perform all or a specific part of work required in the execution of a contract, the same to be performed, not by him personally, necessarily, he being at liberty to perform the same by such servants and appliances as he may see fit to employ, an employee? (3) Was the service of a notice containing a statement of the plaintiff's claim, which included a large number of items representing manifestly nonlienable matters, the lienable and nonlienable matters being so intermixed and stated as to render it impracticable for the person receiving the notice to determine either whether all the matters are lienable or if not

to separate those which are lienable from those which are not, a compliance with the statute? (4) Was the notice served in this case a compliance with the statute irrespective of the subject last mentioned? (5) Was the lien petition sufficient under the statute? (6) Did the court obtain jurisdiction of the principal contractor? Such matters involved important facts in issue and disputed questions of law vital to the ultimate question to be solved,—that of whether, as a matter of law, respondent was entitled to a lien. How the court decided any of them, with one exception, we are entirely unable to determine. The finding to the effect that if respondent had a lien it was only for a part of his claim, and that it was impracticable from the evidence to separate the lienable from the nonlienable matters, of course, was sufficient to defeat the lien. So was the finding that plaintiff failed to show when the last lienable work was done, maintaining the allegation of the complaint as to the lien being filed in time, fatal to his case. That was a result easy to reach if the evidence warranted the findings.

Whether the findings are sustained by the evidence admits of serious doubt. If they are, whether they would not have been different had the court been less strict in ruling on objections to evidence and applied those liberal rules that are ordinarily and properly applied, especially in the trial of equity cases, also admits of grave doubt. The purpose of a judicial trial of causes is to administer justice. That should never be lost sight of. Mere technical knowledge is of secondary importance and an effort to effectively display it may prove fatal. If in the end, so far as practicable by human agencies, and with the due observance of established rules, justice does not prevail, the court will have failed to perform its function. Parties should be permitted all reasonable latitude to present their case,—a latitude limited only by those boundaries which cannot be crossed without the commission of prejudicial error, so far as careful attention to

the trial can determine the same, in the presentation of their cause of action or defense. In a trial in equity they are entitled to a decision by the trial court upon each material issue raised by the pleadings; and to such decision also in detail, to at least a reasonable degree, covering the matters not only deemed by the court material to sustain the final judgment, but all those matters as to which there is a reasonable controversy respecting whether they have a material bearing upon the rights of the parties or not. They are also entitled to the decision of the trial judge specifically upon the minor questions of law applicable to the facts found upon which the ultimate conclusion of law must rest. They are entitled to all that from the one who has the opportunity of hearing the evidence and of seeing the witnesses before he surrenders his jurisdiction over the case. That privilege is given or declared by statute in mandatory language in these words: "The judge shall state in his decision separately: (1) The facts found by him; and (2) his conclusions of law thereon." Sec. 2863, Stats. 1898. That means, manifestly, something more than a general finding of facts and a general conclusion of law. As to the facts it means at least a finding in detail of matters essential to be stated in the pleadings to make out the cause of action or defense found by the trial court to exist. It means what it says, and nothing short of the specific findings and conclusions commanded satisfies the full measure of duty according to the standard set by legislative will. That, so far as courts can bow to it without sacrifice of constitutional function, should not be violated.

Failure to make findings and conclusions as above indicated does not constitute reversible error. That has been too often said to be now disturbed. *Willer v. Bergenthal,* 50 Wis. 474, 7 N. W. 352; *Luthe v. Farmers' Mut. F. Ins. Co.* 55 Wis. 543, 13 N. W. 490; *Wilkinson v. Wilkinson,* 59 Wis. 557, 18 N. W. 527; *Dietz v. Neenah,* 91 Wis. 422, 64 N. W. 299, 65 N. W. 500; *Yahr v. Joint School Dist.* 99 Wis. 281,

74 N. W. 779. But judgments have been so commonly sus-
tained, regardless of defective findings and conclusions, it is
feared that in some jurisdictions, and possibly not without
reason, the idea prevails that what the legislature saw fit to
make a significant part of the Code is regarded here to be of
trifling importance. We have striking proof of that in the
case before us, in that there is an entire absence of any special
decision upon most of the contested questions of fact and of
law. The issue as to whether the notice of the plaintiff's
claim to the proprietor was sufficient to satisfy the statute is
treated by embodying the notice in the findings without any
decision as to whether respondent was right or wrong in his
position that the claim was fatally defective. The same is
true as to the lien petition, the affidavit for the order of publi-
cation and the order of publication. The issue as to whether
the work done by plaintiff was of a lienable character under
any circumstances, and that as to whether he was a subcon-
tractor or a mere employee, were treated by embodying in
the findings the undisputed evidence as to the terms of the
contract, without any specific decision, nor any at all so far
as we can discover definitely, as to the proper conclusion of
fact or of law to be drawn from such evidence. To place
upon file a document as a basis for a final decree embodying
a mass of evidentiary matters, with few or no findings upon
the issues between the parties, but with a general conclusion
as to who is entitled to recover, we can hardly dignify as an
attempt to comply with the statute. It should be understood
that failure to comply with the statute is error; that it is
held not reversible error merely because, in harmony with
sec. 2829, Stats. 1898, this court feels bound to hold that, re-
gardless of how numerous and inexcusable the errors commit-
ted upon the trial of a case may be, the judgment must be af-
firmed on appeal unless it appears probable that the substan-
tial rights of the unsuccessful party may thereby have been
injuriously affected. *Mauch v. Hartford,* 112 Wis. 40, 87 N.

W. 816. What this court is bound to overlook in reaching a final result should not be regarded by trial courts as not error at all, or error of such trifling consequence as to be looked upon as of an extremely technical nature,—mere fault in matter of form. Otherwise the result will be that the statute, intended to enable litigants to see the precise grounds upon which their case turned and the unsuccessful party to present his complaints for review here with as little expense and labor as practicable, and this court to fulfill its function in the matter with the benefit of a definite decision by the trial judge, made from his place of advantage, upon every point involved, will fail to effect those valuable results. This case is such a striking example of a bad practice, that it is deemed best not to let the occasion pass without making a reasonably vigorous attempt to give such significance to the statutory duty to which we have referred as will result in that part of the Code creating it being given its proper place in the administration of justice.

As we have indicated, it is not entirely clear that the evidence supports the two infirmities as regards facts in issue in the plaintiff's case, found by the court. But it is not necessary to decide the matter, nor does it seem advisable to do so, nor any of the questions presented in the case except that of whether appellant was an employee of the Engineering Contract Company. The view we have come to on that is so obviously fatal to appellant's claim for a lien that we will let our decision rest solely on our conclusion in respect to it.

Secs. 3314 and 3315, Stats. 1898, give a lien to a principal contractor, subcontractor, or employee of either, "who performs any work or labor," etc., "for, in or about the erection or construction" of such structures and improvements as those involved in this case. At the outset we must not overlook the significance of the terms "principal contractor," "subcontractor," or "employee of either," used in such a way as to unmistakably indicate a legislative purpose to favor

three distinct classes of persons by the statutory privilege.
That precludes us from speculating as to whether a "subcon-
tractor," in the broadest sense of the term, can be classed as
an employee under any circumstances. So we reach the ques-
tion at once of whether appellant was an employee or a sub-
contractor. Within the meaning of the statute he could not
have been both. If he was the latter he was a subcontractor
of a subcontractor, and not within the statute.

As indicated in the statement of facts, appellant's contract
did not bind him to personal service in any proper sense. It
bound him to produce upon the ground of the power com-
pany, so far as the service of transporting from points several
miles therefrom was concerned, a large amount of material
to be used in making the improvements under the principal
contract. He was at liberty to do that with his own teams
or with hired teams, and with the necessary labor to attend
the same. Many teams and servants were required to produce
the result agreed upon.

Much significance appears to be attached by appellant's
counsel to the fact that the plaintiff's servants acted more or
less under the direction of the managing agent for the subcon-
tractor, the Engineering Contract Company; that such super-
intendent gave orders to the man in general charge of appel-
lant's force of servants, and directed the teamsters where to
unload material. We see nothing in that out of harmony
with appellant's being himself a contractor. Though his
teamsters directly or indirectly followed the suggestions of
the manager for the Engineering Contract Company, they
were of course his employees,—men used by and responsible
to him in working out the result which he was under contract
to produce. Obviously, the mere fact that employees of a per-
son, having a distinct portion of contract work to do, take
directions to some extent as the work proceeds from the prin-
cipal contractor does not change the status of their employer
from that of a subcontractor to that of an employee of the

principal contractor. The circumstance in regard to who directed the teamsters where to unload material from their wagons has nothing to do with the question of whether their employer was an employee or a subcontractor. That must be determined by the nature of his contract itself.

Now there can be no question as to what constitutes a principal contractor. He is a person standing in direct relation to the proprietor and responsible to him, permitted, by the nature of his contract, ordinarily, to work out the plan thereof by subletting to others if he sees fit. A subcontractor, then, must be a person whose relation to the principal contractor is substantially the same as to a part of the work as the latter's relation is to the proprietor. He takes some distinct part of the work in such a way that he does not contemplate doing merely personal service. Those whom he employs are his servants. With their aid or without it, and by such means as he deems best for his interests within the lines of the contract, he is obligated to produce the agreed result. The same rule holds good, of course, between him and his subcontractor. The distinguishing feature between the relation of employee and employer and that of contractor and subcontractor is the same whether the subcontractor is removed two or any number of degrees from the person who in the end is to become possessed of the results of the energy employed. While a contractor in any degree is obligated to deliver certain results, so to speak, the employee is obligated to deliver his personal service. That seems in harmony with the common meaning of the words. Unless there is something in the manner of their use in the statute or in the application thereof to the subject-matter with which it deals to indicate to the contrary, that meaning must be deemed to be the one intended by the legislature. Neither of those reasons exists in this case for departing from the common specific meaning of the words. On the contrary, they are used in the statute in such a way as to emphasize such meaning. We are

precluded by a well-known rule from looking at them in their broad, general sense so far as that would permit the meaning of one to overlap that of the other, from the fact that each is used, as we have before seen, as descriptive of a specific class.

"Words will be interpreted with unusual extent of meaning and held to be generic rather than specific, and thus made to cover things which are collateral rather than identical, if the certain meaning of the parties and the obvious justice of the case require this extent of signification." 2 Pars. Cont. (8th ed.) 496.

Applying what has been said, we must conclude that our duty ends here when we declare the common, ordinary meaning of the word "employee" and the word "subcontractor" and determine the status of appellant thereby. That being the case, we might stop at this point, as we have indicated that but one conclusion can be reached. But the matter has been presented with so much earnestness upon both sides and is so vital to the case that we will briefly support the views already expressed.

There is perhaps no better way to demonstrate what is the common signification of a word, the customary use thereof, than to consult standard dictionaries. Adjudged cases where the word under consideration was used in the same relation as in the case in hand are of greater weight than mere lexical definitions; but it is not common to find such identity of expression and identity of relation as to leave no reasonable doubt that in both instances the words were used in exactly the same sense. Webster defines "employee" as one who is employed; and "contractor" as one who contracts to do anything. Those definitions are very general, but they obviously suggest, applied specifically, that an employee is one who is employed to perform personal service; and a contractor, one who engages to do a particular thing, the idea of personal service not being a necessary element in the bargain. In the Standard Dictionary it is said, an employee is a person who is employed; one who works for wages or a sal-

ary or who is engaged in the service of another; a contractor is one who executes plans under a contract; a subcontractor is one who contracts with a principal contractor to do work embraced in the latter's contract,—that is, obviously, one who contracts to execute some integral part of the work covered by the scheme of the principal contract. By the Century Dictionary we are informed that an employee is one who works for an employer; a person working for a salary or wages, usually clerks, workmen, laborers, etc.; that a contractor is one who contracts to furnish supplies or to construct work or erect buildings, or perform any work or service at a certain price or rate; that a subcontractor is one who takes a part or whole of the work from the principal contractor. Thus it will be seen, without any extended analysis of the various lexical definitions, that the significant element in the relation of an employee and his employer, specifically considered, is personal service; while the significant element in such relation between a contractor and his principal is the work as an entirety to be performed by him.

Now a short review of the authorities and we are done. Counsel cites to our attention several: All of them that touch the question at all support rather than weaken what has been said. A note in 24 Am. & Eng. Ency. of Law (1st ed.) 140, containing this language, is cited: "A subcontractor" is "one who takes from the principal contractor a specific part of the work," covered by the latter's agreement. That serves the author to support this text: A subcontractor is "one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance." The note is based on *Farmers' L. & T. Co. v. C. & St. L. R. Co.* 127 Ind. 250, 26 N. E. 784. It was claimed there that the term "laborer" should be deemed to be included in "subcontractors." The court held otherwise, using substantially the quoted language. The gist of the decision is that a laborer is one who furnishes his personal serv-

ice, of a grade commonly performed by persons working by the day, while a subcontractor is one who agrees to do a particular act covered by a superior contract. That is against rather than in favor of appellant's position. There is no distinction between the term "laborer" and the term "employee" as regards the element of personal service. Commonly understood, the latter is broader than the former in that it includes persons in a higher degree of employment. That is the result of what is said in *Watson v. Watson Mfg. Co.* 30 N. J. Eq. 588, and *Gurney v. A. & G. W. R. Co.* 58 N. Y. 358, cited by appellant's counsel. What is said there by no means supports the idea that an employee is nearer the status of a subcontractor than a laborer. The use which appellant's counsel makes of the decisions indicates a misconception of their purport. They are, when rightly considered, as decisive as a case in one court can be in another jurisdiction, that an employee is not a subcontractor under a statute conferring a lien privilege upon two distinct classes of persons, one called subcontractors and the other employees. In *Balch v. N. Y. & O. M. R. Co.* 46 N. Y. 521, it was said that the term "laborer" cannot be construed as designating one who contracts for and furnishes the labor and services of others, or one who contracts for and furnishes one or more teams for work whether with or without his own services, but that such a person is properly described as a contractor. *Vane v. Newcombe,* 132 U. S. 220, 10 Sup. Ct. 60, cited by respondent's counsel, probably gives the distinguishing characteristic between a contractor and an employee, the language used by Mr. Justice Wood of the circuit court being quoted with approval, thus:

"It seems clear to us that Vane was a contractor with the company, not an employee within the meaning of the statute. We think the distinction pointed out by the circuit court is a sound one, namely, that to be an employee within the meaning of the statute Vane 'must have been a servant, bound in some degree at least to the duties of a servant, and not,' as he was, 'a mere contractor, bound only to produce or cause to be

produced a certain result,—a result of labor, to be sure,—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party.' "

That has been cited many times in the federal courts. A significant instance is *Frick Co. v. N. & O. V. R. Co.* 86 Fed. 725, 32 C. C. A. 31, where the term "laborer" was treated as synonymous, except as to mere grade of service, with "employee," and it was held that a person employed by a contractor of electric construction work, to construct the overhead line and string the feed wire at an agreed price per foot, was a subcontractor. *Tod v. K. U. R. Co.* 52 Fed. 241, 3 C. C. A. 60, is to the same effect. There a person who agreed to supply labor of others and teams at a certain price per day was said to be a contractor notwithstanding his relations to his employer were such that he was not bound to any particular length of service. The same was held in *Cochran v. Swann,* 53 Ga. 39. A person who, by contract, got out crossties by the employment of other persons, was denied the privilege of a statute giving a lien to laborers upon the ground that he was a contractor. To the same effect is *Avery v. Ionia Co.* 71 Mich. 538, 39 N. W. 742.

From the foregoing it will be readily seen that appellant cannot reasonably be classed as an employee in respect to the work he contracted to do. He was as free to perform his contract by the employment of others as the principal was to perform his contract that way. The element of personal service essential to the relation of a servant to his master or a laborer to his employer was entirely wanting. Appellant was clearly a subcontractor in the second degree. The privilege of the lien statute does not extend to him.

*By the Court.*—The judgment appealed from is affirmed.