## MORLEY v. McCASKEY et al.

No. 18972. Opinion Filed Oct. 9, 1928. Rehearing Denied Dec. 24, 1928.

J. L. Miller and Edw. A. Jacobson, for plaintiff in error.

Elton B. Hunt, W. L. Eagleton, Jr., and I. M. Boyd, for defendants in error and cross-petitioners in error.

MASON, V. C. J. This was an action to foreclose a mechanic's lien on lot 8, block 3, Morley addition to the city of Tulsa, and the improvements thereon, brought by the defendant in error, W. L. McCaskey, sole trader doing business as W. L. McCaskey Company, as plaintiff, against Sherman Reagan and Lula Clare Reagan. his wife, Ralsa F. Morley, J. F. Shinpoch, and several other persons and corporations.

Briefly, the facts are: That Mr. Morley, the plaintiff in error, was the fee owner of several lots, including lot 8, block 3 of Morley addition to the city of Tulsa; that Sherman Reagan was in the carpenter and contracting business, that on October 26, 1926, Morley sold said lot to Reagan for a consideration of $1,600 and executed a deed to Reagan and his wife therefor, which was filed of record on October 28, 1926; that on said October 26, 1926, Morley agreed to loan Reagan the sum of $500 for the purpose of paying labor in the construction of a dwelling house on said lot; that Reagan and his wife executed to Morley on said 26th day of October, 1926, a mortgage covering said lot in the sum of $2,100 to secure the purchase price of said lot and the sum so loaned, which mortgage was duly filed of record on October 28, 1926. This mortgage was of record before any labor was performed or materials furnished in connection with the construction of said house.

Morley filed answer and cross-petition in which he sought to foreclose his mortgage as a prior lien on said property. The other defendants filed answers and cross-petitions in which each sought to foreclose labor or material liens arising out of the construction of said dwelling.

There was little controversy in the trial court regarding the various claims, except as to the matter of priority of payment. The judgment of the trial court decreed that all labor liens should have equal priority and be paid first. Claims for materials furnished and labor performed in the construction of a designated portion of said building under a unit contract with the general contractor were divided by the court and the lien for labor was ordered paid in this class. After said labor claims, the $1,600 purchase price part of said mortgage of Morley's was ordered paid, and lastly, the balance of Morley's mortgage of $2,100 and all material lien claims were to share pro rata. Attorney fees were allowed and given the same priority as the claim in connection with which they were allowed, except where liens were partly for labor and partly for materials furnished under a unit contract, in which case the entire attorney fees were given equal priority with the labor liens, regardless of the relative amount of labor and material items of the particular claimant.

The trial court also denied the plaintiff, McCaskey, and the defendant Shinpoch any relief on that portion of the plaintiff's petition and Shinpoch's cross-petition wherein

they sought recovery against Morley on the theory that he and Reagan were coadventurers or partners in said transaction. From said judgment, Morley appeals and McCaskey and Shinpoch file cross-appeals.

For reversal, plaintiff in error first contends that the trial court erred in decreeing that the labor liens were prior and superior to the mortgage lien of plaintiff in error.

Liens for labor are provided for by section 7468, C. O. S. 1921, which reads as follows:

"Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor; Provided, that such lien shall attach only while the title to the property remains in the original owner."

Section 7471 provides that said proceeding shall be commenced within eight months after the work is done, and section 7472, C. O. S. 1921, provides that such liens shall take precedence over all other liens whether created prior or subsequent to such laborer's liens.

Plaintiff in error contends, however, that the defendants filed their lien claims under sections 7461 and 7462, C. O. S. 1921, relative to general mechanics' and materialmen's liens, which are prior only to other liens which attach subsequent to the commencement of such work, and for that reason they were not entitled to have the priority of their liens established under section 7468, supra. Liens under section 7461, supra, are enforceable against both the real estate and the improvements thereon and against subsequent owners thereof, while the special laborer's lien, provided for by section 7468, supra, only attaches to the improvements which represent the production of the claimant's labor, and it only attaches while the title to the property remains in the original owner. The contention here made was made in the case of McGuyre v. Duncan, 100 Ok'a. 217, 229 Pac. 199, wherein it was said:

"We think that where the lien claimant brings his proceeding within the time limit fixed in section 7471, for enforcing his laborer's lien, the mere fact of having filed his lien under sections 7461 and 7462 was not such an abandonment of his prior lien claim as would preclude him from asserting his right to a prior lien for labor done as provided in sections 7468 and 7472. The filing of his lien claim certainly would not place him in a worse position than if he had filed no lien claim for the labor done. If no lien claim had been filed for the work and labor done, still under section 7468 and suc-

ceeding sections, he would have a priority over a mortgagee on the product of his labor, whether the mortgage was prior or subsequent to the attaching of his laborer's lien, conditioned that he bring his proceeding to enforce the lien within eight months after the work was completed."

There is no contention that said proceedings herein were not commenced within eight months after the work was done. Such laborers' liens, therefore, attached to the improvements, and to this extent were prior to the mortgage lien of the plaintiff in error. The trial court, however, erred in decreeing said laborers' liens, to be prior to said mortgage lien as to the real estate. Section 7468, supra; Basham et al. v. Goodholm & Sparrow Investment Co., 52 Okla. 536, 152 Pac. 416; Stewart Lumber Co. v. Derry, 122 Okla. 208, 253 Pac. 485.

Counsel next urge that the trial court erred in, decreeing the liens of defendants in error for material to be on a parity with that portion of the indebtedness due plaintiff in error representing the $500 and interest thereon, advanced by the plaintiff in error for payment of labor on said premises. Said mortgage was filed on October 28, 1926, and before any material was furnished or labor performed by the lien claimants.

In Basham et al. v. Goodholm & Sparrow Investment Co., supra, the fourth paragraph of the syllabus reads as follows:

"Under the laws of this state a mortgage duly executed and recorded takes precedence over a materialman's lien accruing after the recording of such mortgage, even to the extent of attaching to improvements placed upon the mortgaged premises afterwards by the materialman."

We, therefore, must conclude that the trial court erred in not holding said mortgage lien to be superior to said material liens.

Some contention is made that when the lien claimed was partly for labor and partly for material, as above set out, the court erred in fixing attorney fees for such claimant on an equal parity with the labor liens; it being contended that such fees should have been prorated. In McGuyre v. Duncan, supra, this court held that attorneys' fees should be given the same rank and preference as the judgment recovered by the lien claimant, but, in view of our conclusion herein, it will not be necessary to discuss the question presented.

The last contention of plaintiff in error is that the trial court erred in separating the labor and material liens growing out of

contracts for completion of certain portions of said building. Counsel urge that such contracts are indivisible and that no portion thereof is entitled to the benefit of the special lien provided for by section 7468, supra.

The plaintiff, McCaskey, pleads that he entered into a written contract with Sherman Reagan to do all the plumbing work and furnish material and fixtures in connection with the construction of said dwelling for the sum of $350. The evidence discloses that most of the cross-petitioners had similar contracts to furnish material and construct a certain unit or portion of said building.

Are such parties "laborers" within the meaning of sections 7468 and 7472, inclusive or are they contractors or subcontractors, as provided for by sections 7461, 7462, and 7463, C. O. S. 1921? If they fall within the provisions of the latter sections, the trial court erred in separating their claims and giving them priority for the labor performed.

An independent contractor has been defined as one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work. Producers' Lumber Co. v. Butler et al., 87 Okla. 172, 209 Pac. 738; Midland Oil & Gas Co. et al. v. Creel et al., 89 Okla. 23, 213 Pac. 852; Tankersley v. Webster, 116 Okla. 208, 243 Pac. 745; Wagoner v. A. A. Davis Construction Co. et al., 112 Okla. 231, 240 Pac. 618; Southern Construction Co. et al. v. State Industrial Commission et al., 112 Okla. 248, 240 Pac. 613.

The Supreme Court of the United States, in Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60, in distinguishing a contractor from an employee, used this language:

"It seems clear to us that Vane was a contractor with the company, not an employee within the meaning of the statute. We think the distinction pointed out by the circuit court is a sound one, namely, that to be an employee within the meaning of the statute Vane 'must have been a servant, bound in some degree at least to the duties of a servant, and not,' as he was. 'a mere contractor, bound only to produce or cause to be produced a certain result—a result of labor, to be sure—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party.'"

In Frick Co. v. Norfolk, etc., R. Co., 86 Fed. 725, the term "laborer" was treated as synonymous, except as to mere grade of service, with "employee," and it was held that a person employed by a contractor of electric construction work to construct the overhead line and string the feed wire at an agreed price per foot was a subcontractor. In Hihn-Hammond Lumber Co. v. Elsom et al., 171 Cal. 570, 154 Pac. 12, a firm which lathed and plastered a house, furnishing the material; a firm which constructed most of the floors and walls, furnishing the material; a company which erected a part of the walls of bath rooms, furnishing the necessary tile; a company which put on a mission tile roof, furnishing the material; a firm which laid the flooring in certain rooms, furnishing the material; and a person who erected the tin work and galvanized iron and copper work, a substantial part of the structure, furnishing the materials—were all held to be "subcontractors" under a statute which divides the liens assertable against the property into four classes, laborers', materialmen's, subcontractors', and original contractors, the "original contractor" being the person who agrees with the owner to construct a building on his property, "laborers" being those who perform labor in the construction of the building, "materialmen" being persons who merely furnish material to the contractors to be used in the construction of the building, and "subcontractors" being all persons who agree with the original contractor to furnish the material and construct for him on the premises some part of the structure which the original contractor has agreed to erect for the owner.

In Farmer v. St. Croix Power Co., 117 Wis. 76, 93 N. W. 830, the court held:

"A laborer is one who furnishes his personal service, of a grade commonly performed by persons working by the day, while a subcontractor is one who agrees to do a particular act covered by a superior contract."

And in Drew v. Mason, 81 Ill. 498, 25 Am. Rep. 288, one who furnishes labor and material is held not to be a laborer. The term "laborer" has repeatedly been held not to include contractors and subcontractors. Tod v. Kentucky Union R. Co., 52 Fed. 241, 18 L. R. A. 305; Little Rock, etc., Co. v. Spencer (Ark.) 47 S W. 196, 42 L. R. A. 334; Indianapolis Northern Traction Co. v. Brennan (Ind.) 87 N. E. 215, 90 N. E. 65, 91 N. E. 503, 30 L. R. A. (N. S.) 85; Rogers v. Dexter, etc., R. Co., 85 Me. 372; Knoxville Table, etc., Co. v. Kerr, 130 Tenn. 159, 169 S. W. 623; Lang v. Simmons, 64 Wis. 525, 529, 530, 25 N. W. 650; McNab, etc.,

Mfg. Co. v. Paterson Bldg. Co., 71 N. J. Eq. 133, 63 Atl. 709, 718.

A laborer ordinarily is a person without particular training and who is employed at manual labor under a contract terminable at will. We are of the opinion that the words "laborers who perform work and labor," used in section 7468, supra, are intended to designate ordinary laborers who perform actual physical toil; common laborers and those who are required to use their hands or muscles in actual work. Such words do not apply to those who furnish both labor and material under a contract to perform a designated portion of an entire contract. The purpose of the statute is to protect a class of persons rarely able to protect themselves, and who, from the laborious nature of their occupations and the necessity of earning their daily bread by daily toil, have not time, opportunity, or training sufficient to inform themselves as to the financial responsibility of the parties for whom they work. It is such persons who work under a contract terminable at will, who are in danger of being discharged without receiving their compensation, and who need this unusual and strong means of enforcing their rights by an ordinary action or by attachment proceedings. It does not seem probable that the Legislature should provide such extraordinary power for collection of compensation for his services to a contractor, who was adequately protected under sections 7461 and 7463, supra.

We conclude that the cross-petitioners who furnished both labor and materials under contracts for the completion of certain portions of said building were not laborers within the provisions of section 7468, supra, and that the trial court erred in separating their claims and establishing the priority of a portion thereof as labor liens.

Cross-petitioners McCaskey and Shinpoch contend that the trial court erred in not holding that Morley was a joint adventurer, coadventurer, and associate and partner of Sherman Reagan, and further erred in not rendering personal judgment against him on the claims of all cross-petitioners. Cross-petitioners plead that Morley was to furnish the lot and advance the money for the construction of the house thereon and that Reagan was to supervise and oversee the construction of said building, and that when said property was sold the profits were to be divided between them. Such allegations, however, are not supported by the evidence, which discloses that Morley sold the lot to Reagan and took a mortgage back for the purchase price and for $500 additional which he loaned to Reagan. The trial court found against the contention of the cross-petitioners, and such finding, being supported by competent evidence, will not be disturbed on appeal.

Cross-petitioners also contend that the court erred in not giving all other liens priority over the mortgage lien of Morley. This question has heretofore been disposed of and is without merit.

For the reasons hereinbefore stated, the judgment of the trial court is reversed, and the case is remanded, with directions to render judgment establishing the priority of said liens as follows:

(1) Labor liens, as provided for by section 7468, supra, as herein construed.

(2) The entire mortgage lien of plaintiff in error, Ralsa F. Morley.

(3) Liens of subcontractors, independent contractors, and materialmen, which shall be coequal and share pro rata.

Attorneys' fees to be given the same rank and preference as the judgment recovered by the lien claimant.

HARRISON, PHELPS, LESTER, CLARK, and HEFNER, JJ., concur.