AMERICAN TANK & EQUIPMENT CO. v.
T. E. WIGGINS, Inc., et al.

No. 22710.   Nov. 27, 1934.

Rehearing Denied Feb. 12, 1935.

Miley, Hoffman, Williams, France & Johnson and M. W. Eddleman, for plaintiff in error.

W. R. Bleakmore, Robert E. Lee, John Barry, and W. L. Farmer, for defendant in error Chicago, Rock Island & Pacific Railway Company.

PER CURIAM. The parties appear as in the trial court and the plaintiff in error, American Tank & Equipment Company, will be referred to as the plaintiff, the defendant T. E. Wiggins, Inc., will be referred to as the defendant contractor, and the defendant Chicago, Rock Island & Pacific Railway Company will be referred to as the railway company.

The plaintiff alleged in its petition that prior to July 15, 1929, the defendant contractor entered into a contract in writing with the railway company, to build, construct, equip, and complete a roadbed for the tracks of the railway company near the southwest edge of Oklahoma City, alleged that a bond was executed by the American Employers Insurance Company, in favor of the railway company, to guarantee the completion of the contract; that on the 15th day of July, 1929, the plaintiff furnished to the contractor certain materials, supplies, equipment, and pipe to go into the construction of said roadbed, and performed for the contractor certain labor in the manufacture of such pipe and equipment; alleged that plaintiff had not been paid for such material; that there was due thereon the sum of $4,562.50; that on October 16, 1929, plaintiff notified the contractor and the railway company of such claim, and that it had and claimed a lien on the roadbed, etc., of the railway company, and prayed for judgment against the contractor against the surety company and for a lien against the roadbed and equipment of the railway company. The surety company answered but before trial the plaintiff dismissed the case as to the surety company, and it is no longer a party to the action. The contractor answered and filed a cross-petition, and the railway company, after demurring to the petition, filed its answer generally denying the allegations of the petition, and further alleged that if the plaintiff furnished materials to the contractor, such materials did not go into the construction of the roadbed or works of the defendant railway company, and alleged that plaintiff had no lien and was entitled to no lien upon the property, roadbed, and equipment of the defendant railway company.

The case proceeded to trial before the court, a jury being waived, judgment for the amount sued for was rendered against the contractor, T. E. Wiggins, Inc., and such judgment was not appealed from and is final, and at the conclusion of the plaintiff's evidence the court sustained the demurrer to the evidence, interposed by the railway company, and entered judgment dismissing said action as to the railway company, to which order the plaintiff excepted, filed its motion for new trial, and upon same being overruled, has perfected its appeal herein; therefore, the only issue for determination herein is whether or not the trial court erred in sustaining the demurrer to plaintiff's evidence, interposed by the railway company, and thereby holding that the plaintiff had no lien upon the properties of the railway company for the materials it furnished the contractor.

The contract between the contractor and the railway company, if any there was, was not introduced in evidence, and there is no evidence in the record that such a contract was made, except the allegations of the petition that a contract was made whereby the contractor was to "build, construct, equip, furnish, and complete a roadbed for the tracks of said railway company." There is

no evidence that the contractor constructed any cement work, culverts, or bridges, or that he did anything other than to place and construct along the line of the right of way, an earth or sand embankment upon which the tracks of the railway company were to be laid, and we can therefore assume that the contract with the railway company only required the contractor to construct an embankment of earth of a specified width and height, and cannot presume that such contract required that the earth be moved or conveyed in any particular manner or by any special mode of conveyance. The evidence shows that the contractor placed a barge in the Canadian river and installed upon the barge a pump with power equipment to operate the same and pumped sand and water from the river, conveying same through the pipe sold to the contractor by the plaintiff to the right of way of the railway company where the same was deposited, the water running off and the sand remaining and the process being continued until the embankment at a given point was completed. The evidence further shows that the contractor commenced the work in August and continued the work until sometime in October, 1929, at which time he was unable to continue with his contract and the work was taken over by his bonding company, who completed the contract in February of 1930. The evidence further shows that at the time the contract and work was abandoned by the contractor, approximately one-third of the work called for in the contract had been completed, and that the bonding company thereafter used the same equipment and the pipe in question in completing the contract. The pipe in question was ten-inch pipe, of various lengths and made of 14-gauge metal, the joints being welded together by plaintiff, and there was approximately one mile of such pipe furnished, and that various lengths of the pipe were used from time to time to convey the sand and water from the river, depending on the distance of the right of way from the river at the different points. The testimony of plaintiff's witnesses is conflicting as to the condition of the pipe after the contract had been completed by the bonding company; two or more witnesses testified that the pipe was so worn by the sand and water passing through it that it was worthless except for junk iron; one witness testified that a number of the joints could be used, and one witness testified that the pipe could be further used for a short pumping job. There

was no evidence as to the market value of the pipe when the work had been completed, but the evidence does fairly show that the life and usefulness of the pipe was to a large extent consumed in the operation.

The applicable section of our statute upon the subject at issue, section 7473, C. O. S. 1921, section 11012, O. S. 1931, is as follows:

"Every mechanic, builder, artisan, workman, laborer or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing toward the equipment, or to facilitate the operation of any railroad, shall have a lien therefor upon the roadbed, buildings, equipments, income, franchises, and all other appurtenances of said railroad, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, beneficiaries under trusts or owners."

The plaintiff contends that, under the provisions of this statute, the evidence showing that the pipe in question was, for all practical and useful purposes, wholly or practically wholly consumed in the operation of constructing the embankment, and the life and usefulness of the pipe having gone into the improvement, that it has a lien on the roadbed, etc., of the railway company to secure the payment of the purchase price of such pipe, while the railway company contends that the pipe furnished the contractor by the plaintiff could not form the basis for a lien under the statute, for the reason that it was not actually used on the premises of the railway company, and did not go into and become an integral part of the completed project, and further contends that such pipe was more in the nature of a tool or appliance and constituted a part of the contractor's permanent equipment.

Mechanics' liens are in derogation of the common law and exist solely by positive legislative enactment, and the courts should construe and enforce such statutes as remedial acts, but such statutes cannot be extended to meet cases not within their scope. Jones on Liens (2d Ed.) sec. 1554; Cincinnati. R. & M. R. Co. v. Shera (Ind. App.) 73 N. E. 293; Morris v. Louisville, etc., R. Co., 123 Ind. 489, 24 N. E. 335. The statute in question being a remedial one, would be entitled to liberal construction, but the rule in such cases seems to be that liberality should be given to the enforcement of the lien, after the lien has clearly attached, and not in determining the question as to whether or not a lien exists. See Caufield v. Polk. 17 Ind. App. 429, 46 N. E. 932; Jones on Liens

(2d Ed), sec. 1554, supra; Phillips on Mechanics' Liens (3d Ed.) sec. 18.

This court has held in construing this statute that no lien exists for the hire of teams to a subcontractor. Kansas City Southern Ry. Co. v. Reinman, 63 Okla. 69, 162 P. 726; Kansas City Southern Ry. Co. v. Wallace, 38 Okla. 233, 132 P. 908. In the Maryland case of Basshor v. Baltimore & Ohio Ry. Co. (Md.) 3 Atl. 285, a lien was denied for machinery purchased by the contractor to grind the stone used in the construction, and also for certain equipment used in conveying the stone, when made, from the plant to the point of construction. A lien was denied in the case of Hall v. Cowan (Wash.) 98 P. 670, for the rental of wheeled scrapers used in grading streets. Likewise, the Washington court, in the case of Gilbert Hunt Co. v. Parry, 110 P. 541, said:

"Articles furnished for use merely as tools and appliances, in carrying on the work of construction, are not lienable."

The court, in Henry Bickel Co. v. National Surety Co. (Ky.) 161 S. W. 1113, said:

"The engine which was used in this case occupied the same place as a hammer, saw, or other tool used by the workmen. The person who rented the engine is no more entitled to a lien * * * than the merchant would be who sold the spades, drills, or other tools constituting his plant."

See, also, 27 Cyc. 38; Crawford v. Crockett, 55 Ind. 220.

The machinery for which the statute authorizes a lien is such as may fairly be contemplated or required by the terms of the contract between the owner of the premises and the contractor, and the title to which when finished will pass to the owner of such property, become a part thereof, and to some extent enhance its value. Cincinnati, etc., R. R. v. Shera, 36 Ind. App. 315, 73 N. E. 293; Basshor v. Baltimore, supra; May & Thomas Hdw. Co. v. McConnell, 102 Ala. 577, 14 So. 768; Meek v. Parker, 63 Ark. 367, 38 S. W. 900.

This court held, in the case of Pickering Lumber Co. v. Fuller, 117 Okla. 53, 244 P. 760, that the materialman could not recover on a road construction bond for material used in constructing concrete forms, where the forms were moved from job to job until worn out; nor for the erection of a temporary building for the storage of cement, nor for a bin in which the cement was mixed, such buildings not being removed by the contractor for the reason that new build-

ings could be constructed more cheaply than the old ones could be used. The court in the opinion used this language:

"The material was used in the nature of equipment to construct the highway. The application of the material to such purposes cannot be said, of itself, to result in the use of the material in the structure, or in the course of making the improvement as contemplated by section 7486, supra. Whether the material so used may be consumed in the course of the construction, will depend on the length of time the material is applied to such use. If the consumption of the material or its value, in the manner it is applied, in connection with the construction, depends upon the period of time it is used, it cannot be said that the material was consumed in the structure or in the course of the construction."

This court, in the recent case of Tway v. Thompson, 160 Okla. 279, 16 P. (2d) 76, held that the surety upon the builder's bond, made pursuant to section 7486, C. O. S. 1921, which provided that the "contractor * * * shall pay all indebtedness incurred for labor or material furnished in the construction of said * * * improvements", was liable for materials furnished in making concrete forms to be used in connection with the making of concrete culverts on a state highway, where the material was entirely used and consumed in the construction thereof and rendered valueless thereby and incapable of removal and use in a like structure.

Plaintiff in its brief cites and relies upon the several decisions from the courts of Kentucky, Wisconsin, Iowa, Missouri, Idaho, and some other states, some of the cases cited being as follows: B. F. Avery & Sons v. Woodruff & Cahill (Ky.) 137 S. W. 1088, 36 L. R. A. (N. S.) 866; Baker & Stewart Lumber Co. v. Marathon Paper Mills Co. (Wis.) 130 N. W. 866, 36 L. R. A. (N. S.) 875; Empire State Surety Co. v. City of Des Moines (Iowa) 131 N. W. 870, 132 N. W. 837; Andrews v. St. L. Tunnel R. Co., 16 Mo. App. 299; Chamberlain v. City of Lewiston (Idaho) 129 P. 1069; Darlington Lbr. Co. v. Westlake Co., 161 Mo. App. 723, 141 S. W. 931; Moritz v. Sands Lbr. Co., 158 Wis. 49, 146 N. W. 1120, 51 L. R. A. (N. S.) 1040; Johnson v. Starrett (Minn.) 149 N. W. 6; Schaghticoke Powder Co. v. Greenwich & J. R. Co. (N. Y.) 76 N. E. 153, and many other cases. Most all of these cases hold that a lien should be sustained for powder and other explosives used in construction work, for lumber and other building materials which are actually and necessarily used in the work

and wholly or partially consumed therein, or which materials by such use have been rendered practically valueless, such as lumber used for forms, for coffer dams, scaffolding, tool-houses and work-shops. The foregoing decisions are not controlling, if applicable, to the facts of this case.

Our lien statute was enacted for the purpose of protecting persons who furnish labor and materials for various improvements; it gives notice to the owner that he must see to it that all those who labor and all those who furnish materials going into the improvements must be paid therefor. The character of the improvement apprises the owner of the character of labor and the kind and character of materials which are ordinarily and reasonably incident to the improvement, and he is chargeable therewith. In the present case the contractor was required to build an embankment of earth only; there is no evidence that anything else was to be constructed; machinery, equipment and labor was only necessary for such work, the owner would be liable for labor performed, not for machinery or equipment. There is no evidence that it was even contemplated by the owner that the contractor would choose to construct the embankment by pumping sand and water from the river, or that it would be necessary for him to acquire pipe to convey such water and sand; there is no evidence that it was within the contemplation of the parties that such pipe would ever be purchased, and it is our opinion that when such pipe was acquired, it became a part of the permanent plant, tools, and equipment of the contractor, was not material actually or necessarily used in the improvement, and that under the law the plaintiff has no lien upon the properties of the railway company for the purchase price of such pipe. The evidence shows that the pipe in question during the progress of the work was moved from location to location. That the pipe was in service for a period of five or six months, and if in fact the life and usefulness of the pipe was practically consumed in the operation, yet, because of the great length of time required in the consumption thereof, under the holdings of this court in the case of Pickering Lumber Co. v. Fuller, supra, plaintiff would be entitled to no lien for the purchase price of said pipe.

Finding no error in the record, the case is affirmed.

The Supreme Court acknowledges the aid of Attorneys D. M. Cavaness, J. D. Carmichael, and Frank M. Bailey in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Cavaness, and approved by Mr. Carmichael and Mr. Bailey, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.