**REPUBLIC BANK & TRUST COMPANY OF TULSA, an Oklahoma Banking Corporation, Appellee,**

v.

**BOHMAR MINERALS, INC., a Virginia Corporation and Dale Miles, James L. Finegan and Ouida L. Finegan, Appellant.**

No. 56321.

Supreme Court of Oklahoma.

March 22, 1983.

As Corrected March 24, 1983.

---

Jack E. Gordon, Gary Barnett, Gordon & Gordon, Claremore, for appellant, Dale Miles.

Stephen A. Schuller, Thomas M. Klenda, Prichard, Norman & Wohlgemuth, Tulsa, for appellee.

OPALA, Justice:

The dispositive issue on certiorari is whether a bulldozer operator who cleared the premises for construction work may claim a laborer's lien pursuant to 42 O.S. 1981 § 92. We hold that the operator's work did not entitle him to the statutory status of a "laborer" with a lien superior to a prior recorded mortgage.[1]

The appellee, Republic Bank & Trust Company of Tulsa [Bank], holds a mortgage upon a tract of land in Rogers County owned by a corporation [Bohmar]. Its mortgage was recorded January 7, 1979.[2] The following October the Bank brought foreclosure proceedings solely against Bohmar. Its petition was later amended to join three additional parties-defendant.[3] Appellant, Dale Miles [Miles], whose lien claim against the mortgaged land is here under review, was one of them.

Miles had a contract with Bohmar to clear the mortgaged premises for a construction site. He personally performed the task with the use of *his bulldozer*. His work began early in February, 1979 and was completed in the latter part of July of that year. In September, 1979 Miles secured a judgment against Bohmar for the contract price of the "labor and services" he rendered on the land in question and later recorded it to secure a judgment lien.

1. Laborer's lien laws—42 O.S.1981 §§ 92 et seq.—stand virtually unchanged since their original enactment. Laws 1910–11, c. 114, p. 254.

The terms of § 92 provide: "Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor; Provided, that such lien shall attach only while the title to the property remains in the original owner."

The terms of § 96 provide: "Liens created under this act *shall take precedence over all other liens whether created prior or subsequent to the laborer's lien* herein created and provided." [Emphasis added].

2. Bohmar purchased 36 acres of land in lots. It hired Miles to clear them all. The present case only deals with approximately 16 acres.

3. The two other defendants both filed disclaimers.

In January, 1980 Miles brought a counterclaim against the Bank in the foreclosure suit.[4] He sought to impress the previously adjudged Bohmar obligation as a *lien*[5] *of paramount priority* against the mortgaged land. The trial court rendered summary judgment for the Bank, ruling that its mortgage was "prior and superior to . . . [other] defendants." Under the terms of this ruling Miles was not entitled to a preferential laborer's lien under § 92. The Court of Appeals reversed this decision. It held that Miles was a "laborer" whose statutory lien was superior in law to that impressed by the Bank's prior recorded mortgage. Certiorari was previously granted on the Bank's petition. We now vacate the Court of Appeals' opinion and reinstate the trial court's judgment.

■ A laborer's lien is in derogation of the common law. It owes its existence solely to a positive legislative enactment.[6] Lien statutes are to be strictly confined within the ambit of the enactment that gave them birth.[7] Although courts must enforce these remedial devices, lien law legislation cannot be extended to cases not within its scope.[8] Liberal construction is accorded to the enforcement stage after it is clearly established that the right has attached, but not so in the process of determining the question of whether a lien does exist in contemplation of law.[9] This is the settled rule that governs all statutory liens in derogation of the common law.

■ Under §§ 92 and 96, a preferential lien is given to laborers upon the product of their labor.[10] It takes precedence over prior recorded mortgage on the same premises.[11] In contrast to the laborer's lien, a mechanic's or materialman's lien is prior only to those encumbrances that attach after commencement of the work upon the premises.[12]

■ As used in § 92, the term "laborer" has a restricted meaning. It refers to "a class of persons rarely able to protect themselves, and who, from the laborious nature of their occupations and the necessity of earning their daily bread by daily toil, have not the time, opportunity, or training sufficient to inform themselves as to the financial responsibility of the parties for whom they work. It is such persons who work under a contract terminable at will who are in danger of being discharged without receiving their compensation, and who need this unusual and strong means of enforcing their rights."[13]

■ In the instant case Miles contracted with Bohmar to furnish his bulldozer and to perform the work at a per-acre rate. In

---

4. The counterclaim filed by Miles in the foreclosure suit was brought within the maximum period of 8 months prescribed by § 92 for the commencement of an action to impress a laborer's lien.

5. The trial court interpreted the judgment lien as having here the same force as a mechanic's lien but not as a laborer's lien. It was noted in the record that Miles had previously sought to impress a mechanic's lien for the other lots he had cleared under contract with Bohmar, but such lots are not involved in the suit before us.

6. *American Tank and Equipment Co. v. T.E. Wiggins,* 170 Okl. 504, 42 P.2d 115, 117 [1934]. See also *Stanolind Crude Oil Purchasing Co. v. Busey,* 185 Okl. 200, 90 P.2d 876, 879 [1939] and *Riffe Petroleum Co. v. Great National Corp., Inc.,* Okl., 614 P.2d 576, 579 [1980].

7. *Riffe Petroleum Co. v. Great National Corp., Inc.,* supra note 6 at 579.

8. *American Tank and Equipment Co. v. T.E. Wiggins,* supra note 6 at 117.

9. *American Tank and Equipment Co. v. T.E. Wiggins,* supra note 6 at 117. In *Harriss v. Parks,* 77 Okl. 197, 187 P. 470, 471 [1920], the court noted that "[s]tatutory liens . . . have been looked upon with jealousy, and generally will only be extended to cases expressly provided for by the statute, and then only where there has been a strict compliance with all the statutory requisites essential to their creation and existence"; Riffe, supra note 6.

10. *Landers v. Bank of Commerce of Okmulgee,* 106 Okl. 59, 233 P. 200, 203 [1925].

11. *Shefts Supply, Inc. v. Brady,* 170 Okl. 590, 41 P.2d 820, 822 [1935].

12. *Morley v. McCaskey,* 134 Okl. 50, 270 P. 1107, 1110 [1928].

13. *Morley v. McCaskey,* supra note 12 at 1110.

legal effect the Miles/Bohmar agreement was not for labor alone. It called for the *rental or furnishing of equipment* with an operator. The entire project took six months to complete. While Miles "personally" cleared the land, he himself provided the *heavy power equipment* for the job and worked without supervision under circumstances more indicative of self-employment than a laborer's status. Miles was free to exercise his independent skill and knowledge in carrying to completion the project he contracted to do. As an independent contractor furnishing both personal labor and heavy equipment for the job contracted to be done, Miles does not fall into the class of persons intended to be protected by § 92.[14] The lien law invoked by him here is primarily designed to protect menial workers who provide services commonly rendered by persons performing manual labor with their own hands for daily wages.[15]

Miles places some reliance on *Home Building and Loan Ass'n v. White*[16] in support of his argument that he is a laborer within the meaning of § 92.

There is no conflict between our conclusion here and the pronouncement in *White* where we said that both skilled and unskilled labor is lienable under § 92. Miles' contribution does not represent solely the product of skilled labor through muscular exertion. While Miles performed all the services himself and not through, or with the aid of, other persons, the end product of his efforts—the clearing of the land—was accomplished not by muscular exertion alone but rather by *self-provided heavy power equipment* under the guiding hand of human agency. The record leaves no doubt but that in the composition of forces—human and mechanical—which by his agreement with Bohmar Miles was called upon to deploy for the land grading project, *machine power* clearly represented *a factor that was vastly preponderant* over the muscular exertion content of the total effort required to complete the job. Since far more than mere labor went into the "service" he rendered, he does not qualify for a laborer's status, although the work he did may in fact qualify as an "improvement" upon the land on which the lien is sought to be imposed.

We are not concerned here with whether the work in clearing the land was lienable as an improvement—an issue decided in *Green v. Reese*[17] in the context of a mechanic's and materialman's lien claim. Rather, the dispositive question is whether Miles is entitled to the status of a laborer under § 92. We need not decide the lienability issue. Miles clearly does not occupy the requisite status of a laborer. Even if the clearing done by him may be said to have been lienable as an improvement, it cannot be impressed as a laborer's lien.

■ Public policy requires that senior encumbrances be afforded protection against all subsequent liens except those which legitimately fall within the narrow § 92 class.[18] Absent some clear statutory mandate, we are powerless to extend the outer limit of labor lien law to one in the position of Miles. Statutory liens in derogation of the common law must be strictly construed.[19]

---

14. An independent contractor is one who is engaged to perform a job according to his own methods, exercising independent judgment without any control of his employer except as to the result of the work to be done. *Morley v. McCaskey,* supra note 12 at 1109.

15. *Shefts Supply Inc. v. Brady,* supra note 11 at 822–823; *Local Federal Savings and Loan Ass'n v. Davidson & Case Lumber Co.,* 208 Okl. 155, 255 P.2d 248, 253 [1953].
We need not decide here—and leave unsettled by this opinion—whether laborer's status may be accorded to one who made improvements upon land working by himself with the aid of

*power tools* such as an electric saw or drill, a pneumatic hammer or some like appliance.

16. 141 Okl. 240, 284 P. 889 [1930].

17. Okl., 261 P.2d 596 [1953].

18. *Basham v. Goodholm & Sparrow Inv. Co.,* 52 Okl. 536, 152 P. 416 [1915].

19. *Martin Coal & Coke Co. v. Brewer,* 185 Okl. 169, 90 P.2d 653, 655 [1939].
Our approach here does not conflict with the provisions of 12 O.S.1981 § 2 and 25 O.S.1981 § 29 which require statutes in derogation of the

The opinion of the Court of Appeals is vacated and the trial court's judgment is affirmed.

SIMMS, V.C.J., and IRWIN, DOOLIN and WILSON, JJ., concur.

BARNES, C.J., and HODGES and HARGRAVE, JJ., dissent.

At issue in this appeal is whether the fee owner of an unleased mineral interest in a common law to be liberally construed. Valuable common-law rights cannot be held abrogated by statutes whose text neither expressly nor implicitly affects them. The rule of liberal construction is not intended as a device for extending the scope of enactments. Rather, its sole purpose is favorably to construe legislation with a view to effectuating the lawmakers' objective. Loose construction should not be applied in the process of determining legislative intent. The court should initially determine what the legislature intended to accomplish and then apply liberal construction to give *full effect* to the purpose that can be divined. *In re Captain's Estate,* 191 Okl. 463, 130 P.2d 1002, 1004 [1942]; *Roxana Petroleum Co. v. Cope,* 132 Okl. 152, 269 P. 1084, 1086 [1928].